JORDAN RENNER, M.D. v. BARBARA HAWK, Ph.D, BARBARA RENNER, AND NICHOLAS RENNER, BY AND THROUGH HIS GUARDIAN AD LITEM, ROBERT LODDENGAARD

No. COA96-287

(Filed 4 March 1997)

1. **Pleadings § 62 (NCI4th)— Rule 11 sanctions—motion filed after dismissal—reasonable time**

    The trial court properly ordered Rule 11 sanctions against plaintiff and plaintiff's counsel even though defendant moved for sanctions after plaintiff filed a voluntary dismissal. The North Carolina Rules of Civil Procedure do not contain explicit time limits for filing a motion for Rule 11 sanctions; however, a party should make Rule 11 motions in a reasonable time after an impropriety is discovered. In this case, the defendant's motion was filed within a reasonable time of detecting the alleged impropriety.

**Am Jur 2d, Federal Courts § 656; Pleading § 339.**

RENNER v. HAWK

[125 N.C. App. 483 (1997)]

**Procedural requirements for imposition of sanctions under Rule 11, Federal Rules of Civil Procedure. 100 ALR Fed. 556.**

2. **Pleadings § 63 (NCI4th)— findings—sufficiency of evidence—plaintiff's allegations**

    The trial court did not err when imposing sanctions under N.C.G.S. § 1A-1, Rule 11 for filing an action seeking copies of a child's mental health records for the unstated purpose of discovering whether the records contained information detrimental to a custody action by finding that plaintiff made no factual allegations as the basis for the action other than allegations regarding his concerns that defendant-psychologist's treatment might be detrimental to his son's mental health. Although plaintiff asserts that there was an additional allegation that he had joint legal custody of his son, there is no authority that a mere allegation of joint legal custody in and of itself constitutes a sufficient factual basis for a claim that a party has a legal right to a copy of his child's mental health records.

    **Am Jur 2d, Federal Courts § 656; Pleading § 339.**

    **Procedural requirements for imposition of sanctions under Rule 11, Federal Rules of Civil Procedure. 100 ALR Fed. 556.**

3. **Pleadings § 63 (NCI4th)— Rule 11 sanctions—improper purpose—findings supported by evidence—conclusion supported by findings**

    The trial court's findings in orders imposing Rule 11 sanctions that the true purpose of plaintiff's action was to discover the contents of a pediatric psychologist's records prior to filing a motion to modify a custody order were supported by sufficient evidence in the record and those findings clearly support the conclusion that plaintiff filed the action for an improper purpose. An improper purpose may be inferred from filing suit with no factual basis for the purpose of fishing for evidence of liability.

    **Am Jur 2d, Pleading § 4.**

    **Procedural requirements for imposition of sanctions under Rule 11, Federal Rules of Civil Procedure. 100 ALR Fed. 556.**

RENNER v. HAWK

[125 N.C. App. 483 (1997)]

**4. Evidence and Witnesses § 161 (NCI4th)— Rule 11 sanctions—statements made by attorney as to purpose of suit—settlement negotiations—admissible**

The trial court did not err when imposing Rule 11 sanctions by considering statements made by the attorney where the attorney contended that the statements were made during compromise negotiations. N.C.G.S. § 8C-1, Rule 408 does not require the exclusion of evidence that is otherwise discoverable or offered for another purpose merely because it is presented in the course of compromise negotiations. Assuming that all of the statements here were made in the course of compromise negotiations, the evidence was not offered to prove liability or the invalidity of the claim or its amount, but that the claim was brought for an improper purpose.

**Am Jur 2d, Compromise and Settlement § 48; Evidence §§ 515, 516.**

**5. Evidence and Witnesses § 84 (NCI4th)— Rule 11 sanctions—refusal to meet with opposing party—relevant**

The trial court correctly determined that plaintiff's refusal to meet with defendant-psychologist was relevant to a Rule 11 motion where plaintiff had filed a declaratory judgment action seeking the records of his child's treatment by a pediatric psychologist, he had alleged in his complaint that he was unable to determine the nature of the therapy being provided to his son, unable to adequately evaluate the therapy to determine whether it was harmful to his son and whether he should take steps to have it terminated, and that he was concerned that continuation of the therapy might be detrimental to his son's mental health. These claims appear to lack credibility if plaintiff indeed refused to meet with defendant to discuss her treatment of his son; such evidence is relevant to determining whether the action was filed for an improper purpose.

**Am Jur 2d, Evidence §§ 307, 309-312.**

Appeal by plaintiff and respondent from orders entered 8 November 1995 and 11 December 1995 by Judge David Q. LaBarre in Orange County Superior Court. Heard in the Court of Appeals 20 November 1996.

As part of a divorce judgment in 1990, plaintiff Dr. Jordan Renner and intervenor defendant Barbara Renner were granted joint custody

of their son, Nicholas Renner, now eleven years old. The divorce order provided that Nicholas would reside primarily with his mother and granted visitation rights to plaintiff. In June of 1990, Nicholas was evaluated by a pediatric psychologist, defendant Dr. Barbara Hawk. Defendant Hawk notified plaintiff of this evaluation and provided him with a copy of the resulting report. Four years later, in April 1994, Nicholas began therapy with defendant Hawk on a regular basis.

When plaintiff learned of the ongoing therapy he, by and through his attorney, respondent Patrice Solberg, sent a letter to defendant Hawk on 3 August 1994 requesting a release of Nicholas's mental health records. On 15 August 1994 defendant Hawk replied to respondent Solberg by letter, stating: "Because Nicholas, not either of his parents, is my client, those records are confidential and privileged and cannot be released to either father or mother." Defendant Hawk also noted that she never heard from plaintiff after sending him notice of the initial evaluation in 1990 and added:

> I am very concerned about Nicholas and am, as I have always been, most interested in meeting with Dr. Renner to discuss information and concerns from my initial evaluation and subsequent contacts with Nicholas. I would urge you to support Dr. Renner in contacting me so that he and I—and you as his counsel—could meet.

When plaintiff declined to meet with defendant Hawk, she provided him with a written summary of Nicholas's therapy records on 6 October 1994. Defendant Hawk enclosed with the summary a letter encouraging plaintiff to meet with her "in the interest of his son." On 23 November 1994, defendant Hawk wrote a letter to plaintiff, stating: "I would like very much to meet with you to discuss my concerns about Nicholas and to enlist your help in addressing those concerns."

Finally, on 2 December 1994, defendant Hawk's attorney, Carol J. Holcomb, wrote a letter to respondent Solberg explaining that in her opinion, defendant Hawk's therapy with Nicholas is privileged communication. She also asserted that defendant Hawk had fulfilled her duty to plaintiff "by providing a written summary of her work with Nicholas to him and by time and time again offering to meet with Dr. Renner to more fully inform him of his son's special needs and progress and to involve Dr. Renner in his son's treatment." Holcomb closed the letter by stating that defendant Hawk "renews her offer to meet with Dr. Renner to discuss Nicholas and her work with him."

Plaintiff never met with defendant Hawk. Instead, he responded by filing an action against defendant Hawk on 30 January 1995, seeking a declaratory judgment that he has a right to a copy of all records she generated in her therapy sessions with Nicholas. In his verified complaint, plaintiff cited the following reasons to support his claim:

15. Without a copy of said records, Plaintiff is unable to determine the nature of the "therapy" being provided to his son. He is further unable to adequately evaluate said "therapy" to determine whether it is harmful to his son and whether he should take steps to have said "therapy" terminated.

16. Plaintiff is concerned that continuation of said "therapy" may be detrimental to his son's mental health. Said detriment may be irreparable.

Plaintiff concurrently filed an application and motion for permanent injunction asking the court to order defendant to refrain from refusing to provide him with the requested records. He alleged that defendant's refusal to provide him with a copy of those records "may endanger the mental health of the Plaintiff's son and thereby constitute irreparable injury, loss and damage."

Defendant Hawk answered, specifically denying the allegations set forth above. As an affirmative defense, she asserted that the information in her files is confidential and privileged, pursuant to both N.C. Gen. Stat. § 8-53.3 and the Ethical Principles of Psychologists and Code of Conduct. In addition, she asserted that plaintiff "has consistently failed and refused to meet with Dr. Hawk, to speak with Dr. Hawk by telephone, or even to correspond with her regarding his specific concerns, if there be any, for his son, Nicholas Renner." Defendant Hawk also moved for appointment of a guardian ad litem for Nicholas.

On 17 March 1995 Nicholas's mother, Barbara Renner, filed a motion to intervene in the cause, which the court allowed. Barbara Renner also moved to join Nicholas as a necessary party, and the court ordered such joinder on 7 June 1995.

Respondent Solberg deposed defendant Hawk on 23 May 1995. Subsequent to this deposition, counsel for plaintiff and defendants communicated several times regarding the possibility of a settlement. On 27 June 1995, defendant's counsel, Carol Holcomb, served a notice of deposition on plaintiff, scheduled for 11 July 1995. On 10 July 1995, however, plaintiff moved to voluntarily dismiss the action without

prejudice pursuant to Rule 41(a) of the North Carolina Rules of Civil Procedure.

One month later, on 10 August 1995, defendant Hawk filed a motion for sanctions and attorneys fees against plaintiff pursuant to Rule 11 of the North Carolina Rules of Civil Procedure. Defendant Hawk alleged that plaintiff filed the action for an improper purpose because his motive was not to prevent harm to his son but rather to learn if his son had given defendant Hawk information that would harm plaintiff in an action for modification of custody. Defendant attached to her motion affidavits from Carol Holcomb, her counsel, Susan Lewis, counsel for Barbara Renner, and LeAnn Nease, counsel for Nicholas Renner. The affidavits stated that in various communications with respondent Solberg throughout the course of discovery, she implied that the purpose for filing this action was to discover any harmful information about plaintiff that might deter him from filing a motion for modification of custody.

After the motion for sanctions was heard on 25 September 1995, the trial court entered a show cause order, giving notice to respondent Solberg to appear and show cause why Rule 11 sanctions should not be imposed upon her. The trial court ordered sanctions against plaintiff on 8 November 1995. After the show cause hearing on 4 December 1995, the trial court also ordered sanctions against respondent Solberg. Plaintiff and respondent appeal the sanctions orders.

*Karen Krajci Murphy for plaintiff appellant Jordan Renner and respondent appellant Patrice Solberg, and Patrice Solberg, pro se.*

*Northen, Blue, Rooks, Thibaut, Anderson & Woods, L.L.P., by Carol J. Holcomb, for defendant Barbara Hawk.*

ARNOLD, Chief Judge.

[1] Plaintiff and his attorney, respondent Patrice Solberg, first argue that the trial court lost jurisdiction over the case once it was voluntarily dismissed, and therefore it was error subsequently to entertain a motion for sanctions. Appellants attempt to distinguish this case from others because of the fact that defendants filed the motion for sanctions *after* the voluntary dismissal was entered, rather than before the action was terminated. We find this distinction unimportant, and appellants' argument to the contrary unpersuasive.

Under N.C. Gen. Stat. § 1A-1, Rule 41(a)(1) (1990) a plaintiff may take a voluntary dismissal of his case without prejudice by filing a notice of dismissal at any time before resting his case. The effect of such a voluntary dismissal is to terminate the action, and no suit is pending thereafter on which the court can enter a valid order. *Collins v. Collins*, 18 N.C. App. 45, 50, 196 S.E.2d 282, 286 (1973). In *Bryson v. Sullivan*, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992), the North Carolina Supreme Court clearly established, however, that a voluntary dismissal pursuant to Rule 41(a) "does not deprive the court of jurisdiction to consider collateral issues such as sanctions that require consideration after the action has been terminated." *See also Cooter and Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 L. Ed. 2d 359, 375-76 (1990); *Lassiter v. N.C. Farm Bureau Mut. Ins. Co.*, 106 N.C. App. 66, 70, 415 S.E.2d 212, 215, *disc. review denied*, 332 N.C. 148, 419 S.E.2d 573 (1992); *Higgins v. Patton*, 102 N.C. App. 301, 305, 401 S.E.2d 854, 856 (1991), *overruled on other grounds by Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992).

Plaintiff correctly submits that in *Bryson*, and the other cases cited above, the Rule 11 motion for sanctions was filed *before* the voluntary dismissal. He appears to argue that these cases establish continuing jurisdiction over only collateral issues that are *pending* at the time a voluntary dismissal is taken, not those that are filed *after* a voluntary dismissal. Such a narrow reading of these cases is unwarranted.

Defendant points to *Overcash v. Blue Cross and Blue Shield*, 94 N.C. App. 602, 381 S.E.2d 330 (1989) as controlling in this case. In *Overcash*, the defendant filed a Rule 11 motion and notice of appeal after the trial court granted partial summary judgment for plaintiff, awarded attorney's fees and costs, and plaintiff voluntarily dismissed his remaining claims. This Court held that the "termination of the action and defendant's filing of notice of appeal did not automatically deprive the court of jurisdiction to impose sanctions pursuant to Rule 11." *Id.* at 617, 381 S.E.2d at 340.

In addition, this Court recently ruled in *VSD Communications, Inc. v. Lone Wolf Publishing Group, Inc.*, 124 N.C. App. 642, 478 S.E.2d 214 (1996), that a Rule 11 motion filed after a voluntary dismissal was viable, because such motions "have a life of their own and they address the propriety of the adversary proceedings that have previously occurred in the case without regard to whether the adversary proceedings in question are continuing when the motion . . . is

filed." *Id.* at ——, 478 S.E.2d at 216 (citing *Bryson*, 330 N.C. at 664, 412 S.E.2d at 338). Neither *Overcash* nor *VSD Communications*, however, fully addresses the question of post-dismissal motions for sanctions, and we find this an appropriate occasion to clarify the issue.

Determining the propriety of post-dismissal sanctions motions may be assisted by analysis of the analogous Federal Rules of Civil Procedure. "The North Carolina Rules of Civil Procedure, including Rule 11, are, for the most part, verbatim recitations of the federal rules. Decisions under the federal rules are thus pertinent to our analysis." *Tittle v. Case*, 101 N.C. App. 346, 349, 399 S.E.2d 373, 375 (1991) (citations omitted), *overruled on other grounds by Bryson v. Sullivan*, 330 N.C. 644, 657, 412 S.E.2d 327, 334 (1992).

In *Cooter and Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 L. Ed. 2d 359 (1990) the Supreme Court focused on the purposes and policies of both Rule 11 and Rule 41(a) and implied that whether a motion for sanctions is filed before or after voluntary dismissal is unimportant.

> Both Rule 41(a)(1) and Rule 11 are aimed at curbing abuses of the judicial system, and thus their policies, like their language, are completely compatible. . . . [A] voluntary dismissal does not eliminate the Rule 11 violation. Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal. . . . If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to "stop, think and investigate more carefully before serving and filing papers."

*Id.* at 397-98, 110 L. Ed. 2d at 377 (quoting Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules (Mar. 9, 1982))). *See also Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604 (1st Cir. 1988) (noting that neither Rule 11 nor Rule 41 contains post-voluntary dismissal limitations); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1079 (7th Cir. 1987) (likening Rule 11 sanctions to contempt sanctions for purposes of post-voluntary dismissal jurisdiction), *cert. dismissed*, 485 U.S. 901, 99 L. Ed. 2d 229 (1988).

The Court in *Cooter* further noted that Rule 11 itself contains no time limits on filing motions: "District courts may, of course, 'adopt

local rules establishing timeliness standards,' for filing and deciding Rule 11 motions." *Cooter and Gell*, 496 U.S. at 398, 110 L. Ed. 2d at 377 (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 454, 71 L. Ed. 2d 325, 333 (1982)). The Court recognized, therefore, that absent a rule to the contrary, sanctions motions may appropriately be filed after a voluntary dismissal.

Neither Rule 11 nor Rule 41 of the North Carolina Rules of Civil Procedure contains explicit time limits for filing Rule 11 sanctions motions. We find the reasoning in *Cooter* persuasive and decline to impose any time limits contrary to the plain language of the rules. We agree, though, that "a party should make a Rule 11 motion within a reasonable time" after he discovers an alleged impropriety. *Muthig*, 838 F.2d at 604. Defendant asserts that the alleged impropriety became apparent not when the complaint was filed, but only during the course of discovery. We find that in this case defendant filed her Rule 11 sanctions motion within a reasonable time of detecting the alleged impropriety.

Plaintiff also contends that the doctrine of laches bars defendant from seeking sanctions after the voluntary dismissal was entered. This alternative time-based argument is unpersuasive, since we find that the Rule 11 sanctions motion was filed in a reasonable time.

Having determined that the trial court did not err in considering the motion for Rule 11 sanctions filed after the voluntary dismissal, we now address appellants' arguments assigning error to the sanctions orders themselves.

[2] Plaintiff first argues that the evidence was not sufficient to support several of the trial court's findings of fact in the 8 November 1995 order. A trial court's order imposing Rule 11 sanctions is reviewable *de novo* under an objective standard. *Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989), *disc. review denied*, 329 N.C. 505, 407 S.E.2d 552 (1991). On *de novo* review, an appellate court must determine (1) whether the trial court's conclusions of law support its judgment or determination; (2) whether the trial court's conclusions of law are supported by its findings of fact; and (3) whether the findings of fact are supported by a sufficiency of the evidence. *Id.*

Although we are without the benefit of a transcript from the 25 September 1995 sanctions hearing, we find sufficient evidence in the existing record to support the factual findings of which plaintiff complains. Plaintiff first takes issue with the trial court's finding of fact

that, other than the allegations in his complaint regarding his concerns that defendant's treatment may be detrimental to his son's mental health, plaintiff made no other factual allegation as the basis for filing his action. Plaintiff asserts that an additional allegation in his complaint—that he has joint legal custody of his son—"constituted a sufficient factual basis" for his complaint. We know of no authority, however, that a mere allegation of joint legal custody in and of itself constitutes a sufficient factual basis for a claim that a party has a legal right to a copy of his child's mental health records. Plaintiff's argument is unavailing.

We have reviewed plaintiff's remaining arguments based on an alleged insufficiency of the evidence and find them without merit.

[3] Plaintiff also takes issue with the trial court's finding of fact that plaintiff's suit was not well grounded in fact or warranted by existing law, and further asserts that the trial court erred in concluding that the action was interposed for an improper purpose.

The trial court found, however, that "the true purpose of the action was that Plaintiff sought to discover the contents of Defendant Hawk's records prior to filing a Motion to Modify the existing Custody Order in District Court[.]" An improper purpose may be inferred, as in this case, "from 'filing suit with no factual basis for the purpose of "fishing" for some evidence of liability.' " *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (citation omitted).

On *de novo* review, this Court must determine whether the trial court's conclusion is supported by the findings of fact. *Turner*, 325 N.C. at 165, 381 S.E.2d at 714. The findings of fact complained of, along with others in both sanctions orders, are supported by sufficient evidence in the record. We hold that those findings of fact clearly support the trial court's conclusion that plaintiff interposed the action for an improper purpose.

[4] Appellants also assert several evidentiary arguments. Respondent Solberg first contends that certain statements she made as counsel for plaintiff were in the course of compromise negotiations and were therefore inadmissible pursuant to Rule 408 of the North Carolina Rules of Evidence. We disagree.

Rule 408 provides that evidence of conduct or statements made in compromise negotiations is inadmissible. N.C. Gen. Stat. § 8C-1, Rule 408 (1992). This rule does not, however, require the exclusion of evidence that is otherwise discoverable or offered for another pur-

pose, merely because it is presented in the course of compromise negotiations. *Id.*

Respondent Solberg complains specifically that the trial court erred in considering certain allegations made by Carol Holcomb, Susan Lewis, and LeAnn Nease in their affidavits, which were attached to defendant's motion for sanctions and attorney's fees. Generally, these allegations questioned plaintiff's motive for filing the original complaint against defendant.

Holcomb stated that in a phone conversation regarding potential settlement of the case, respondent Solberg said she filed the action to discover if there was any information about plaintiff in the records that might harm him in a suit for modification of custody. Lewis stated that she witnessed a discussion between respondent Solberg and Holcomb after defendant's deposition in which Solberg said that she wanted access to Dr. Hawk's medical records, and she did not think she could get them in district court.

Finally, Nease cited a letter to Solberg in which she communicated her understanding about an earlier conversation they had:

"Because of the unusual nature of relief you seek for Dr. Renner, I asked you why this case had been filed. You told me that Jordan Renner planned to file a motion regarding a change in visitation but he did not want to file it until he had seen the information in Dr. Hawk's file because he did not want to 'file it in the dark[.']"

Nease stated that respondent Solberg never indicated to her that this understanding of the conversation was incorrect.

Assuming, *arguendo*, that all of the statements in question were made in the course of compromise negotiations, the evidence was not offered "to prove liability for or invalidity of the claim or its amount." G.S. § 8C-1, Rule 408. Clearly, defendant offered the evidence to show not that plaintiff's claim lacked validity, but that it was brought for an improper purpose. " 'Since the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule.' " *Id.* cmt. (quoting Advisory Committee's Note).

**[5]** Plaintiff argues that the trial court erred in determining that his refusal to meet with defendant was relevant to the Rule 11 motion. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

NATIONSBANK OF N.C. v. AMERICAN DOUBLOON CORP.

[125 N.C. App. 494 (1997)]

without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). A trial court's rulings on relevance are given great deference on appeal. *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992).

In this case, evidence that plaintiff refused to consult with defendant about the state of his son's mental health is clearly relevant to determining the validity of his claims. Plaintiff alleged in his complaint that he is "unable to determine the nature of the 'therapy' being provided to his son"; that he is "unable to adequately evaluate said 'therapy' to determine whether it is harmful to his son and whether he should take steps to have said 'therapy' terminated"; and that he is "concerned that continuation of said 'therapy' may be detrimental to his son's mental health." If plaintiff indeed refused to meet with defendant to discuss her treatment of his son, these claims appear to lack credibility. We agree with the trial court that such evidence is relevant to determining whether the action was filed for an improper purpose.

For the reasons stated above, the sanctions orders against plaintiff and respondent Solberg are

Affirmed.

Judges EAGLES and MARTIN, Mark D., concur.