WILSON REALTY & CONSTRUCTION, INC., BILLIE C. WILSON, AND VERNON WILSON, PLAINTIFFS v. ASHEBORO-RANDOLPH BOARD OF REALTORS, INC., THOMAS A. TROLLINGER, JAY KING, AWEILDA WILLIAMS, BETTY PELL, VICKIE LORIMER, PEGGY HAMMER, WALTER COTTEN AND PAT COOPER, DEFENDANTS

No. COA98-1061

(Filed 3 August 1999)

### 1. Evidence— compromise negotiations—statements offered for other purposes

The trial court erred in granting summary judgment for defendants, Board of Realtors, on the claim of breach of "good faith and fair dealing" because it improperly ruled the affidavit of plaintiff's attorney concerning statements made by defendants' attorney was inadmissible. Even if the statements of defendants' attorney were made to plaintiff's attorney in the context of a settlement negotiation, plaintiff did not offer these statements to prove its innocence of the charges against it, but instead to support a separate and distinct claim for damages on the ground that defendants denied it a fair hearing.

### 2. Evidence— hearsay—negotiations—scope of agency

Statements made by defendants' attorney during negotiations with plaintiff's attorney that recant out-of-court statements concerning what certain of his unidentified clients told him were not hearsay because the statements concern a matter within the scope of the attorney's agency and were made during the existence of the agency relationship.

Appeal by plaintiffs Wilson Realty & Construction, Inc., Billie C. Wilson, and Vernon Wilson from order filed 30 September 1997 by Judge Ben F. Tennille in Randolph County Superior Court. Heard in the Court of Appeals 8 June 1999.

*Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr. and Matthew W. Sawchak; and Moore & Brown, by B. Ervin Brown, II, for plaintiff-appellants.*

*Rightsell, Eggleston & Forrester, L.L.P., by Donald P. Eggleston, for defendant-appellees.*

WILSON REALTY & CONSTR., INC. v. ASHEBORO-RANDOLPH BD. OF REALTORS

[134 N.C. App. 468 (1999)]

GREENE, Judge.

Wilson Realty & Construction, Inc. (Plaintiff) appeals from the trial court's grant of summary judgment for Asheboro-Randolph Board of Realtors, Inc. and its individual members, Thomas A. Trollinger, Jay King, Aweilda Willaims, Betty Pell, Vickie Lorimer, Peggy Hammer, Walter Cotten, and Pat Cooper (collectively, the Board). Plaintiff, a corporation doing business in Asheboro, Randolph County, North Carolina, is a licensed real estate brokerage firm. The Board is a nonprofit corporation, the members of which engage in the listing, sale, or appraisal of real estate in and around Asheboro, Randolph County, North Carolina. Membership in the Board is voluntary. Plaintiff became a member of the Board in order to obtain access to its Multiple Listing Service (MLS). MLS is a service by which members of the Board publish and advertise exclusive listing agreements for the sale of real estate. The rules of the Board include the by-laws and Code of Ethics of the National Association of Realtors (NAR).

Plaintiff filed this lawsuit as a result of a series of grievance hearings the Board conducted against Plaintiff and its owners and officers, Vernon Wilson (Mr. Wilson) and Billie C. Wilson (Mrs. Wilson).[1] On 12 July 1994, as a result of a complaint against Plaintiff and Mrs. Wilson filed with the Board by a fellow realtor and member of the Board, the Board held a grievance hearing. Prior to 12 July 1994, the attorney for Plaintiff and Mrs. Wilson, L. Charles Grimes (Grimes), met with the Board's attorney, Donald P. Eggleston (Eggleston), to discuss the upcoming hearing.

After the grievance hearing, the Board held Mrs. Wilson to be in violation of the NAR Code of Ethics. The Board also held that Plaintiff and Mrs. Wilson had violated certain provisions of an order entered by the Board in 1993 as a result of a prior grievance hearing. Mrs. Wilson was expelled from Board membership for a period of two years and fined $2,500.00. Plaintiff was suspended from Board membership for a period of one year, and was also fined $2,500.00.

On 23 March 1995, Plaintiff filed a complaint in Superior Court. The complaint alleged the Board "breached its obligation of good faith and fair dealing" with respect to Plaintiff. Plaintiff, additionally,

---

1. Procedurally there is only one plaintiff on appeal. Originally, Wilson Realty and Construction, Inc. and Mr. and Mrs. Wilson, in their individual capacities, each asserted claims against the Board. The claims of Mr. and Mrs. Wilson were dismissed previously, however, and they did not appeal from that dismissal.

alleged the Board had committed unfair and deceptive trade practices and had conspired to restrain trade. The Board counterclaimed for wrongful civil proceedings and moved for summary judgment on all claims. Summary judgment was granted for the Board on Mr. and Mrs. Wilson's claims.

On 7 June 1995, Plaintiff filed the affidavit of Grimes relating his sworn version of the conversation between himself and Eggleston prior to the 1994 grievance hearing. The Grimes affidavit stated, in pertinent part, that Eggleston had advised Grimes "that many members of [the Board] were very upset with [Grimes'] clients for many reasons . . . [and] it would be wise to resolve the matter short of having a grievance hearing because the Board would subject Mrs. Wilson to the maximum monetary fine and expulsion." On 16 November 1995, Plaintiff moved to have Eggleston either disqualified as the Board's attorney for this case or barred from testifying in this case. On 30 May 1996, the Honorable W. Steven Allen, Sr. (Judge Allen) denied the motion. In his order, Judge Allen made no findings as to the admissibility of the Grimes affidavit.

On 30 September 1996, the Honorable Ben F. Tennille (Judge Tennille) ruled the Grimes affidavit inadmissible for two reasons: (1) Judge Tennille believed Judge Allen's denial of Plaintiff's motion to disqualify Eggleston or bar his testimony rendered the Grimes affidavit inadmissible, and (2) Judge Tennille concluded the Grimes affidavit was inadmissible pursuant to Rule 408 of our Rules of Evidence. Based in part on this ruling, Judge Tennille granted the Board's motion for summary judgment on Plaintiff's claims.

---

The dispositive issue is whether there is a genuine issue of material fact as to the impartiality of the Board.

It is well established that courts will not interfere with the internal affairs of voluntary associations. 6 Am. Jur. 2d *Associations and Clubs* § 37 (1963). A court, therefore, will not "determine, as a matter of its own judgment, whether [a] member should have been suspended or expelled." *Id.* A decision of a voluntary association to suspend or expel a member, however, is subject to judicial review to determine whether: (1) the proceeding was conducted pursuant to the rules and laws of the association; (2) the rules and laws of the association are against public policy; and (3) the member had fair notice and a hearing conducted in good faith before an impartial tribunal at which she had an opportunity to be heard. *Id.*; Sydney R.

Wrightington, *The Law of Unincorporated Associations* § 56 (1916). In other words, a member of a voluntary association has no recourse to the courts when she is suspended or expelled by the association, if that association is vested with authority to take such action, such action is not against public policy, and such action is pursuant to fair notice and a hearing conducted in good faith before an impartial tribunal. *See Lowery v. Int'l Bhd. of Boilermakers*, 130 So. 2d 831, 839 (Miss. 1961).

[1] In this case, Plaintiff's primary contention[2] is that it did not receive a hearing before an impartial tribunal. In support of this argument, Plaintiff points to the Grimes affidavit. In this affidavit, Grimes asserts that Eggleston told him "many members" of the Board "were very upset" with his clients[3] and if the matter was not resolved "the Board would subject [them][4] to the maximum monetary fine and expulsion." We believe this evidence, if admissible, raises a genuine issue of material fact as to whether the Board was impartial. Members of a hearing tribunal must be in an "impartial frame of mind at beginning of trial," must be "influenced [only] by legal and competent evidence produced during the trial," and must base their "verdict [only] upon evidence connecting" a party with the commission of the offense charged. *Black's Law Dictionary* 752 (6th ed. 1990) (defining "impartial jury"). Statements made prior to the hearing that some members of the Board were upset with Plaintiff or were inclined to subject it to the maximum penalties are an indication that those Board members were not in an impartial frame of mind at beginning of trial, and were influenced by something other than evidence produced during the hearing.

---

2. Plaintiff also argues in its brief to this Court that the hearing before the Board was not in keeping with the mandates of the rules of the Board, in that it did not receive a sufficiently specific notice of the charges, it was denied an opportunity to cross-examine witnesses at the hearing, and the hearing committee did not sign the Certificate of Qualification. We do not address these contentions because the rules of the Board are not a part of the record before this Court and thus cannot be relied on by Plaintiff to support its claims.

3. At the time of this alleged conversation there is no dispute that Grimes represented both Plaintiff and Mrs. Wilson.

4. Although the Grimes affidavit only states the Board would "subject Mrs. Billie Wilson" to the maximum penalties, because the Board consolidated complaints against Plaintiff, Mr. Wilson, and Mrs. Wilson into one hearing, a reasonable juror could conclude that any comments with respect to Mrs. Wilson applied to the other parties as well. In any event, a determination that the Board was not impartial with respect to one party could support the conclusion that it was not impartial to other parties in the same proceeding.

The Board contends the Grimes affidavit is not admissible for several reasons. The Board first argues that evidence of a conversation between Grimes and Eggleston, as reflected in the Grimes affidavit, is inadmissible under Rule 408 of the Rules of Evidence. We disagree. Rule 408 does prohibit the presentation into evidence of "conduct or . . . statements made in compromise negotiations," to prove liability for a claim, invalidity of a claim, or amount of a claim. N.C.G.S. § 8C-1, Rule 408 (1992). This Rule, however, does not prohibit the presentation of evidence of statements made in compromise negotiations, if offered for some other purpose. *Id.*; *Renner v. Hawk*, 125 N.C. App. 483, 492-93, 481 S.E.2d 370, 375-76 (statement made by attorney during compromise discussion admissible to support Rule 11 violation), *disc. review denied*, 346 N.C. 283, 487 S.E.2d 553 (1997). In this case, assuming Eggleston's statements were made in the context of settlement negotiations, Plaintiff does not offer them to prove its innocence of the charges against it before the Board, but instead to support a distinct and separate claim for damages on the ground that it was denied a fair hearing by the Board.

[2] The Board next argues the evidence contained in the Grimes affidavit constitutes hearsay and is thus inadmissible because it is a recantation of what unidentified members of the Board told Eggleston. We disagree. Under Rule 801(d), a statement made by an agent of a party relating an out-of-court statement made by that party is admissible against that party if the statement concerns a matter within the scope of the agency and was made during the existence of the agency relationship. N.C.G.S. § 8C-1, Rule 801(d) (1992). In this case, there is no dispute that Eggleston represented the Board in its negotiations with Plaintiff and that his statements to Grimes were made within the context and scope of that representation. It follows that the Grimes affidavit is admissible under Rule 801(d).

Finally, the Board argues the Grimes affidavit is inadmissible because Judge Allen had earlier ruled it inadmissible and Plaintiff never appealed from that ruling. Although the record in this case contains an order entered by Judge Allen denying Plaintiff's motion to disqualify Eggleston, nowhere in that order (or in the record) is there any evidence that Judge Allen ruled the Grimes affidavit inadmissible. Accordingly, we reject this argument.

Plaintiff also asserted claims for conspiracy in restraint of trade and unfair and deceptive trade practices, and argues in support of these claims in its brief to this Court. After careful review of the evi-

dence submitted in support of these claims, we hold that genuine issues of material fact simply are not presented. The trial court thus correctly entered summary judgment on these claims for the Board.[5] *See Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 351 (1985) (summary judgment proper where no genuine issue of material fact is presented by the evidence).

We also reject the Board's cross-assignments of error, as the issues it attempts to raise by cross-assignment may only be raised by cross-appeal. *Cox v. Robert C. Rhein Interest, Inc.*, 100 N.C. App. 584, 588, 397 S.E.2d 358, 361 (1990). A cross-assignment of error relates to rulings of the trial court that "deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal was taken." N.C.R. App. P. 10(d). The issues the Board seeks to raise here, the dismissal of its "wrongful civil proceeding" claim and the denial of its request for attorney's fees, do not serve as an alternative basis for supporting the trial court's order granting summary judgment on Plaintiff's claims.

Accordingly, summary judgment for the Board on Plaintiff's claim for breach of "good faith and fair dealing" is reversed and remanded. Summary judgment for the Board on Plaintiff's remaining claims is affirmed.

Affirmed in part, reversed in part, and remanded.

Judges WYNN and MARTIN concur.

---

5. Plaintiff also alleged claims based on "breach of fiduciary duty" and violation of the due process provisions of the North Carolina Constitution, article I, section 19. Neither of these claims are argued in the brief and therefore are deemed abandoned. *See* N.C.R. App. P. 28. We do note, however, that because the grievance procedure before this voluntary association did not involve state action, the constitution is not implicated. *See State v. Avent*, 253 N.C. 580, 118 S.E.2d 47 (1961), *vacated on other grounds*, 373 U.S. 375, 10 L. Ed. 2d 420 (1963).