CDC PINEVILLE, LLC, PLAINTIFF v. UDRT OF NORTH CAROLINA, LLC, DEFENDANT

No. COA04-1505

(Filed 6 December 2005)

**1. Trespass— failure to show affirmative defense—negligence—easement by necessity—easement implied from prior use**

The trial court did not err by finding that plaintiff established a prima facie case of defendant's trespass for damage caused by the break in a stub-out on plaintiff's property from a water pipe serving defendant's property and that defendant failed to estab-

CDC PINEVILLE, LLC v. UDRT OF N.C., LLC

[174 N.C. App. 644 (2005)]

lish that it had any affirmative defense to the trespass, because: (1) there was sufficient evidence to support the trial court's finding that defendant owned the water that ran through the water pipe and subsequently flooded plaintiff's property thus causing damage to plaintiff's property; (2) although defendant argues on appeal that plaintiff negligently caused the release of water onto plaintiff's property and that defendant did not intentionally cause the water to enter onto plaintiff's property, at no point in the pleadings did defendant plead plaintiff's negligence as an affirmative defense nor did the trial court make any finding of fact regarding plaintiff's alleged negligence; (3) defendant failed to establish the affirmative defense of easement by necessity since the trial court's findings of fact properly supported the court's conclusions of law that it was not necessary that the pipe or stubout be located on plaintiff's property in order for defendant to use and enjoy its property; and (4) defendant failed to establish the affirmative defense of easement implied from prior use when defendant did not meet the required test of permanency.

**2. Damages and Remedies— reasonableness—trespass**

The trial court did not err in a trespass case by awarding plaintiff $122,918.80 for damage caused by the break in a water pipe, because plaintiffs presented sufficient evidence to allow the trial court to calculate the damages to a reasonable degree of certainty.

**3. Appeal and Error— cross-assignment of error—unnecessary to reach issue**

Although plaintiff has cross-assigned error to the trial court's findings of fact in a trespass case that the pipe was owned by plaintiff and that the pipe originally was installed on plaintiff's property prior to the severance of title, it is unnecessary to reach this cross-assignment of error because the Court of Appeals already affirmed the trial court's finding that plaintiff established a prima facie case of defendant's trespass and that defendant failed to establish any affirmative defense.

**4. Appeal and Error— cross-assignment of error—cross appeal**

Although plaintiff has cross-assigned error that there was insufficient evidence to support the trial court's reduction in plaintiff's damages in a trespass case, this cross-assignment of error is dismissed because it is not an alternative basis in law

for supporting the judgment, but instead constitutes an attack on the judgment itself. The correct method for plaintiff to have raised this question on appeal was to have raised the issue on cross appeal.

Appeal by defendant and cross appeal by plaintiff from the supplemental judgment and order entered 14 September 2004 by Judge John O. Craig, III, in Guilford County Superior Court. Heard in the Court of Appeals 9 June 2005.

*Isaacson, Isaacson & Sheridan, LLP, by Jennifer N. Fountain, and Forman Rossabi Black, PA, by Amiel J. Rossabi, for plaintiff-appellee.*

*Smith Moore, LLP, by Stephen P. Millikin and Lisa Kaminski Shortt, for defendant-appellant.*

JACKSON, Judge.

CDC Pineville, LLC ("plaintiff") is the owner of a tract of land located on Old Pineville Road in Pineville, North Carolina. UDRT of North Carolina, LLC ("defendant") is the owner of a tract of land located at 5221 Cherrycrest Lane in Pineville, North Carolina. Plaintiff and defendant's tracts are adjacent to one another, and both tracts previously were owned by a common grantor, Korbler Development Corporation ("Korbler").

The Korbler family owned a large tract of land, out of which both parties' tracts eventually were severed. The Korbler family and other partners formed Korbler Development Corporation and Hill Haven Developers ("Hill Haven") to build a large apartment complex in five phases on the land owned by the Korbler family. In preparing the construction plans, the developer attempted to structure Phase I such that the next phase would tie conveniently into it. After the apartments were completed on Phase I of the construction project, Korbler and Hill Haven abandoned further development plans due to financial difficulties.

In December 1974, Korbler deeded the portion of land that included the apartments to Hill Haven, which later deeded the property to defendant. In January 1975, Korbler deeded a separate parcel of the land to Suitt Construction Company ("Suitt"), which is not a party to this action. The remaining parcel of Korbler's land, with the exception of a small portion not at issue in this matter, was

acquired in May 1981 at a foreclosure sale by two partners from Hill Haven. The partners subsequently deeded this remaining parcel to plaintiff.

In October 2000, plaintiff was developing its land for an apartment complex. During the process of grading a portion of the land adjacent to defendant's property, a construction crew employed by plaintiff broke a stub-out from a water pipe serving defendant's property, thereby causing defendant's apartment complex to lose water pressure and supply. The water pipe extended from defendant's property, onto plaintiff's property by way of the stub-out. The construction crew was in the process of grading the land for a private street, and was working solely on plaintiff's property when it struck the pipe. Water flowing from the broken pipe caused damage to the street compaction, sedimentation pond, wetlands, and caused silt to collect in pipes that had been installed for plaintiff's property.

On 6 September 2001, plaintiff filed a complaint against defendant in Guilford County Superior Court. Plaintiff alleged that defendant trespassed onto plaintiff's property when it allowed: (1) a concealed water pipe on plaintiff's property without plaintiff's permission; (2) the water pipe to flood plaintiff's property; and (3) the water pipe to remain on plaintiff's property without plaintiff's permission. Plaintiff also alleged that defendant was negligent in that defendant had a duty to remain within its own property lines, to ensure that its facilities did not encroach on neighboring property, it breached that duty by allowing the water pipe to exist on plaintiff's property and to flood plaintiff's property, and that the damage from the flooding to plaintiff's property was in excess of $10,0000.00. In its answer, defendant pled the affirmative defenses that, in the water pipe, it had implied easements by necessity and from prior use.

On 2 July 2002, the trial court granted defendant's motion for directed verdict on plaintiff's claim for negligence, but denied its motion for directed verdict for plaintiff's trespass claim. The trial court ordered defendant to pay plaintiff one hundred twenty-two thousand, nine hundred and eighteen dollars and eighty cents ($122,918.80) plus court costs and interest. In its order, the trial court's conclusions of law stated:

(2) The use of the water pipe by the grantor, Korbler Development Corporation, prior to the separation of title . . . was not of sufficient duration to show that the easement was so long continued and obviously manifest to show it was

intended to be permanent despite evidence that the grantor's usage was obvious and manifest. As a result, Defendant did not meet the test for permanency required for an easement from prior use.

(3) The common grantor of Defendant and Plaintiff did not intend to use one portion of its tract for the benefit of the other.

(4) The claimed easement by Defendant was not necessary to the use and enjoyment of Defendant's property.

(5) Defendant did not have the benefit of an implied easement from prior use.

(6) The common grantor, Korbler Development Corporation, did not intend that grantee, Hill Haven Developers, should have right of access onto Plaintiff's property.

(7) Neither Korbler Development Corporation nor Hill Haven Developers intended the Defendant's pipe to be in the location where it was found. Therefore, the requisite intent for an implied easement by necessity was not shown by Defendant. It was not necessary for the stub and the pipe located on Plaintiff's property to be there in order for Defendant to use and enjoy Defendant's property. . . .

(8) Defendant did not have the benefit of an implied easement by necessity when the entry onto Plaintiff's property occurred.

(9) In that Plaintiff established its prima facie case on trespass and Defendant failed to establish any affirmative defense (including any easement to enter upon Plaintiff's property), Defendant is liable to Plaintiff in trespass.

Defendant appealed the trial court's July 2002 order. On 16 December 2003, this Court remanded the case back to the trial court for further findings of fact and conclusions of law, holding that:

These findings of fact appear to indicate that the pipes were located on property owned by CDC and conveyed by the common grantor, Korbler. Moreover, the findings indicate CDC stipulated to ownership of the land. However, the findings fail to establish when the pipes were placed on CDC's land. Indeed, the record shows that before the conveyances by Korbler, the apartments currently owned by UDRT were in operation and water flowed to

CDC PINEVILLE, LLC v. UDRT OF N.C., LLC

[174 N.C. App. 644 (2005)]

the tenants. Thereafter, Korbler conveyed the adjoining property to CDC. When the pipe was damaged by CDC's contractors, the apartments lost water pressure and supply. Upon investigation, it was determined CDC's contractors damaged a stub-out which lay underneath a gas line, also damaged by the contractor. The gas line, phone line, and water system ran underneath a paved road and served UDRT's property. This evidence suggests that the pipe was installed by the common grantor, Korbler, before the properties were separately conveyed to CDC and UDRT property. Although CDC argues that UDRT did not meet its burden in demonstrating the pipes were in place before the initial 1974 conveyance, the burden was upon CDC to establish each element of trespass in order to shift the burden to UDRT to present an affirmative defense. . . . [T]he record appears to indicate that CDC owned some of the land in which the water pipes were installed prior to the initial conveyance. However, the findings of fact fail to indicate whether the trial court evaluated this evidence nor are there findings of fact regarding the current ownership of the property as it relates to how it was developed in the early 1970s when the pipes were installed. The significance of additional findings on this issue would shed light on the issue of whether the location of the pipe when it was damaged was the same as it was when the property was commonly owned. If so, then the common grantor would have conveyed ownership of that part of the pipe located on CDC's property to CDC, not UDRT. It would therefore follow that if CDC owned the part of the pipe that it damaged on its property, it could not recover damages based upon a trespass claim. . . . Hence, the findings are inadequate to determine whether UDRT owned the water that damaged CDC's property.

*CDC Pineville, LLC v. UDRT of North Carolina, LLC*, No. 02-1695, 2003 N.C. App. LEXIS 2296, at *5-8 (N.C. Ct. App. Dec. 16, 2003) (*CDC Pineville I*).

Following argument in chambers on 14 January and 3 August 2004, the trial court made additional findings of fact and conclusions of law. A supplemental judgment and order was filed on 14 September 2004. The supplemental judgment and order restated and amended specific findings and conclusions of law from the original July 2002 order, and also made additional findings of fact and conclusions of law which supplemented the findings and conclusions of the original order. All findings of fact and conclusions of law from the original

order that were not amended by the supplemental judgment and order remained in full force and effect. Defendant now appeals from this judgment.

[1] Defendant contends that the trial court erred in finding that plaintiff proved its *prima facie* case of trespass. Specifically, defendant asserts that it took no action to cause the water to flow onto plaintiff's property, and that the pipe was owned and controlled at all times by plaintiff. Further, defendant argues that plaintiff, by its own negligence, caused the water to divert from its normal path resulting in damage to its property.

"In order to establish a trespass to real property, a plaintiff must show: (1) his possession of the property at the time the trespass was committed; (2) an unauthorized entry by the defendant; and (3) resulting damage to the plaintiff." *Shadow Grp., LLC v. Heather Hills Home Owners Ass'n*, 156 N.C. App. 197, 201, 579 S.E.2d 285, 287 (2003). Further, without a showing of negligence, "trespass to land requires an intentional entry" onto the land of another. *Indus. Ctr. v. Liab. Co.*, 271 N.C. 158, 163, 155 S.E.2d 501, 506 (1967). In the instant case, neither party disputes the fact that damage was done to plaintiff's property as a result of the break in the water pipe. Further, neither party disputes the fact that the water pipe ran from the water meter at the northern edge of defendant's property, across defendant's property, and that the stub-out crossed defendant's property line onto plaintiff's property, where it then extended onto plaintiff's property.

A trial court's findings of fact are binding on appeal, provided they are "supported by any competent evidence in the record." *Patterson v. Taylor*, 140 N.C. App. 91, 95, 535 S.E.2d 374, 377 (2000). "Where no exceptions have been taken to the findings of fact, such findings are presumed to be supported by competent evidence and are binding on appeal." *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962); *see also Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). However, a trial court's conclusions of law are fully reviewable on appeal. *See State v. Barber*, 335 N.C. 120, 436 S.E.2d 106 (1993), *cert. denied*, 512 U.S. 1239, 129 L. Ed. 2d 865 (1994).

It is undisputed that plaintiff owned the land at the time and place where the pipe was damaged. The trial court found as fact that "[t]he water flowing through the damaged water pipe was owned by Defendant at the time of the break." This finding was uncontested on

appeal by either party, and thus is binding on the court. The trial court further found that:

    2. Water flowed from Defendant's property, through Plaintiff's pipe and onto Plaintiff's property, causing damage to Plaintiff's property. Plaintiff did not authorize Defendant's entry onto Plaintiff's property. (Restated original finding of fact 13)

. . . .

    4. Only that portion of the water pipe which was located on Plaintiff's property as found in 2000 was owned by Plaintiff. (Supplemental finding of fact 4)

. . . .

    14. Once the water passes through the water meter located at the northern end of Defendant's property, Defendant becomes the owner of the water that comes onto and services its property. (Supplemental finding of fact 14)

Of the above findings of fact, only supplemental finding of fact four is uncontested and thus binding on appeal. Plaintiff contests restated finding of fact number two, in that the court found that plaintiff owned the pipe, and defendant contests supplemental finding number fourteen, in that the court found that defendant owned the water that passed through its water meter. The trial court was presented with testimony that defendant owned the water pipe that extended from its water meter onto its property, and that once water passes through a water meter that measures the amount of water for which the owner will be billed, the owner of the pipe beyond the meter then becomes owner of the water. Testimony presented also showed that at the time of the break in the pipe, defendant had to turn off the water in order to stop the flooding onto plaintiff's property, thereby evidencing that defendant ultimately had control over the water. Based on the testimony presented at trial, we hold there was sufficient evidence to support the trial court's finding that defendant owned the water that ran through the water pipe and subsequently flooded plaintiff's property, thereby causing damage to plaintiff's property.

Neither party disputes the fact that plaintiff did not authorize defendant to enter onto plaintiff's property. Defendant argues on appeal that plaintiff negligently caused the release of water onto plaintiff's property, and that defendant did not intentionally cause the water to enter onto plaintiff's property. However, at no point in the

pleadings did defendant plead plaintiff's negligence as an affirmative defense, nor did the trial court make any finding of fact regarding plaintiff's alleged negligence. Thus, we cannot find defendant's argument on this issue to be meritorious, and we hold there was sufficient evidence presented at trial to support the trial court's conclusion that plaintiff had established a *prima facie* case of defendant's trespass.

As an affirmative defense to trespass, a defendant may assert that its entry onto plaintiff's land "was lawful or under legal right." *Singleton v. Haywood Elec. Membership Corp.*, 357 N.C. 623, 628, 588 S.E.2d 871, 874 (2003) (citing *Hildebrand v. Tel. Co.*, 216 N.C. 235, 236, 4 S.E.2d 439, 439 (1939)). In the instant case, the trial court concluded as a matter of law that defendant failed to establish that the existence of the pipe on plaintiff's property constituted an implied easement by prior use or necessity, and thus defendant had failed to establish any affirmative defense to plaintiff's claim of trespass.

Defendant contends the trial court erred in finding that it did not have an easement by necessity. Defendant specifically argues that the property was owned and conveyed by a common grantor, the easement in land in which the water pipe was laid became necessary upon separation of title, and when the pipe was installed, Korbler intended that Hill Haven have the right of access.

In order to establish an easement by necessity, one must show that: "(1) the claimed dominant parcel and the claimed servient parcel were held in a common ownership which was ended by a transfer of part of the land; and (2) as a result of the land transfer, it became 'necessary' for the claimant to have the easement." *Wiggins v. Short*, 122 N.C. App. 322, 331, 469 S.E.2d 571, 577-78 (1996) (citing *Harris v. Greco*, 69 N.C. App. 739, 745, 318 S.E.2d 335, 339 (1984)). One need not show absolute necessity, only "physical conditions and use which would 'reasonably lead one to believe that the grantor intended the grantee should have the right of access.' " *Id.* at 331, 469 S.E.2d at 578 (citations omitted). The right to use the easement "must be necessary to the beneficial use of the land granted, 'and to its convenient and comfortable enjoyment, as it existed at the time of the grant.' " *Id.* (citation omitted). If an easement by necessity is to be created, it will be created, if at all, upon conveyance from the common ownership. *See Boggess v. Spencer*, 173 N.C. App. 614, 619, 620 S.E.2d 10, 13 (2005) (citing *Broyhill v. Coppage*, 79 N.C. App. 221, 226, 339 S.E.2d 32, 37 (1986)).

**CDC PINEVILLE, LLC v. UDRT OF N.C., LLC**

[174 N.C. App. 644 (2005)]

In this case, the trial court found as fact, which neither party contested, that neither Korbler nor Hill Haven ever intended for the pipe to be located on the tract which later became plaintiff's property. Further, the trial court found, and the testimony presented at trial tended to show, that no one involved in any of the construction projects or conveyances had any knowledge that the pipe had been installed south of the boundary line for Phase I, which later became the property boundary between the parties' properties. Testimony from William Korbler, former secretary of Korbler Development Corporation, indicated that the water pipe was installed to service Phase I of their project, and that Korbler Development Corporation hoped to be able to tie into that water pipe as they developed future phases of their project. The future phases were to be constructed on other portions of Korbler's land. He also testified that at no time during the construction on Phase I, when the pipe was installed, was there any construction or work done on the property which later became plaintiff's property.

The trial court concluded as a matter of law that Korbler, the common grantor, never intended to use one part of its property for the benefit of another. Accordingly, we hold there was sufficient evidence presented at trial to support the trial court's findings that the parties involved in the construction of Phase I and the subsequent conveyances believed that the pipe had been installed completely on defendant's property, and that although Korbler may have intended to "tie into" the water pipe in the future, there was insufficient evidence to show that it intended to use the Phase I property to benefit its other tracts of land.

The trial court also found that defendant's source of water originated at the northern edge of its property, opposite of its southern boundary with plaintiff's property. Thus it was not necessary that defendant's water pipe be located on plaintiff's property in order for defendant's property to have access to water. In addition, testimony presented at trial showed that following the break in the water pipe, defendant paid a utility contractor to move the water pipe so that it existed solely on defendant's property. This testimony weighs heavily on the issue of whether or not it was *necessary* that the pipe be located on plaintiff's property such that defendant could make beneficial use of its land. The trial court's findings of fact properly support the court's conclusions of law that it was not necessary that the pipe or stub-out be located on plaintiff's property in order for defendant to use and enjoy its property thus, there was no easement by necessity.

Therefore, we hold the trial court did not err in concluding that defendant failed to establish that it had an affirmative defense of easement by necessity.

Defendant next asserts that the trial court erred in determining that it did not have an implied easement from prior use.

To have established an implied easement by prior use, defendant was required to prove that:

> (1) there was a common ownership of the dominant and servient parcels of land and a subsequent transfer separated that ownership, (2) before the transfer, the owner used part of the tract for the benefit of the other part, and that this use was "apparent, continuous and permanent," and (3) the claimed easement is "necessary" to the use and enjoyment of plaintiffs' land.

*Metts v. Turner*, 149 N.C. App. 844, 849, 561 S.E.2d 345, 348 (2002) (citing *Knott v. Washington Hous. Auth.*, 70 N.C. App. 95, 98, 318 S.E.2d 861, 863 (1984)). "[A]n 'easement from prior use' may be implied 'to protect the probable expectations of the grantor and grantee that an existing use of part of the land would continue after the transfer.' " *Knott*, 70 N.C. App. at 97-98, 318 S.E.2d at 863 (citation omitted). Thus, defendant had to show that the use of the purported easement existed prior to the severance of title by Korbler, and that at the time of the severance, Korbler intended that the use would continue. The use of the easement must be "so . . . long continued as to show it was meant to be permanent." *Tower Dev. Partners v. Zell*, 120 N.C. App. 136, 144, 461 S.E.2d 17, 23 (1995) (citation omitted) (holding eighteen months is insufficient to establish an easement by prior use). A review of our State's caselaw "indicates the shortest time heretofore recognized as sufficient to imply an easement is thirteen years." *Id.* (citing *Potter v. Potter*, 251 N.C. 760, 112 S.E.2d 569 (1960)). The majority of cases finding an easement by prior use were cases with a use in excess of 30 years. *Id.*; *see, e.g.*, *Spruill v. Nixon*, 238 N.C. 523, 78 S.E.2d 323 (1953) (at least 35 years); *Biggers v. Evangelist*, 71 N.C. App. 35, 321 S.E.2d 524 (1984), *disc. rev. denied*, 313 N.C. 327, 329 S.E.2d 384 (1985) (30 years); *McGee v. McGee*, 32 N.C. App. 726, 233 S.E.2d 675 (1977) (60 years); *Dorman v. Ranch, Inc.*, 6 N.C. App. 497, 170 S.E.2d 509 (1969) (42 years).

As found by the trial court, and supported by testimony presented at trial, the water pipe was installed during the construction of Phase I, which ended in 1973. Korbler then conveyed the Phase I property to Hill Haven in 1974; it conveyed a separate tract of its land

in 1975; and the remaining property, which is now plaintiff's property, was lost in a foreclosure sale in 1981. Although Korbler intended the water pipe to be permanent at the time it was installed, there was no evidence presented indicating that Korbler Development Corporation intended that the grantees of its other tracts of land would be permitted to utilize the water pipe and stub-out that existed on plaintiff's property. There was testimony and evidence presented that when Korbler conveyed the tract to Suitt in 1975, it also conveyed an easement to allow Suitt to tie into the Phase I water and sewer lines, but not at the stub-out and water pipe which later was found on plaintiff's property. In addition, the use of the water pipe by Korbler was not of sufficient duration prior to severance of title to comport with our caselaw giving rise to an easement by prior use.

Therefore, we hold the trial court's findings of fact were supported by competent evidence, and thus supported the court's conclusions of law finding that defendant failed to meet the test for permanency as required to establish an easement by prior use. The court therefore acted properly in finding that defendant failed to establish the affirmative defense of easement by prior use.

**[2]** Defendant further contends the trial court erred by awarding plaintiff $122,918.80 for damage caused by the break in the water pipe. Defendant specifically argues that the evidence of the damages, the bills presented as evidence at trial, consisted of nothing more than a "mere recitation by plaintiff of its damages."

A plaintiff has the burden of proving the amount of the "loss with reasonable certainty." *Erler v. Aon Risks Servs., Inc.*, 141 N.C. App. 312, 319, 540 S.E.2d 65, 70 (2000) (quoting *Phillips v. Ins. Co.*, 43 N.C. App. 56, 58, 257 S.E.2d 671, 673 (1979)). A plaintiff must present data showing a basis for the reasonableness of the loss amount, however "proof to an absolute mathematical certainty is not required." *State Properties, LLC v. Ray*, 155 N.C. App. 65, 76, 574 S.E.2d 180, 188 (2002), *disc. rev. denied*, 356 N.C. 694, 577 S.E.2d 889 (2003). If there is a question regarding the reliability of the evidence presented to support an award of damages, the questions should go to the weight of the evidence, and generally should not be grounds for exclusion of the evidence. *See Beroth Oil Co. v. Whiteheart*, 173 N.C. App. 89, 95, 618 S.E.2d 739, 744 (2005) (citing *State Prop., LLC*, 155 N.C. App. at 76, 574 S.E.2d at 188).

Here, plaintiff presented evidence that D&M Builders was employed by plaintiff to construct the apartment buildings on plain-

tiff's land. D&M Builders was hired not only to perform the construction, but also to oversee and manage all aspects of the project. Plaintiff presented documentary evidence of all of the bills plaintiff and D&M Builders received for work done in order to repair the damage caused by the break in the water pipe. After the break in the pipe, D&M created a specific code in its billing system so that it could track all of the work related to repairing the damage caused by the water. The superintendent of the plaintiff's project, an employee of D&M, testified that the water that came from the broken pipe caused serious erosion to the already compacted construction site and to the area that had been prepared for a road, and that it caused serious flooding and damage to the sedimentation pond and the wetlands that abutted plaintiff's property. At the time of the trial, plaintiffs and D&M Builders still were incurring fines and expenses as a result of continuing damage to the wetlands, caused by the flooding. Testimony also showed that the entire construction project was delayed for nearly thirty days, in order to repair the erosion, remove the silt from pipes installed on plaintiff's property, and repair other aspects of the project.

Testimony showed that all bills which were addressed to D&M Builders, as managers of the project, were paid by D&M Builders, and then plaintiff reimbursed D&M Builders. Both the superintendent from D&M Builders and one of plaintiff's managing members, testified that they witnessed the work being done, all of the bills presented as evidence had been paid in the ordinary course of business, all of the work done and amounts paid were reasonable, and the expenses were incurred as a result of defendant's water flooding onto plaintiff's property. Defendant objected to the admission of the bills into evidence, but did not produce any evidence to dispute the amount of the charges or that they actually were paid. Therefore, we conclude that plaintiffs presented sufficient evidence to allow the trial court to calculate the damages to a reasonable certainty, thus supporting the trial court's findings and award of $122,918.80 in damages to plaintiff.

[3] Plaintiff has cross-assigned error to the trial court's findings of fact that the pipe was owned by plaintiff, and that the pipe originally was installed on plaintiff's property prior to the severance of title. Plaintiff argues that no competent evidence was presented at trial to support these findings.

Rule 10(d) of the North Carolina Rules of Appellate Procedure provides that "an appellee may cross-assign as error any action or

omission of the trial court which . . . deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." N.C. R. App. P. 10(d) (2005). As we have found no error in the trial court's finding that plaintiff established a *prima facie* case of defendant's trespass, for which defendant failed to establish any affirmative defense, it is unnecessary to reach plaintiff's cross-assignments of error regarding the trial court's findings that at the time of the break plaintiff owned the portion of the pipe on its property, or that the pipe was installed on plaintiff's property prior to the severance of title.

[4] As plaintiff's final cross-assignment of error, plaintiff argues that there was not sufficient evidence to support the trial court's reduction in plaintiff's damages. As previously stated, cross-assignments of error must be limited to an "alternative basis in law for supporting the judgment." Plaintiff's cross-assignment of error regarding the damages award is not an alternative basis, but rather constitutes an attack on the judgment itself. Plaintiff's arguments concerning the damages award attempt to show how the trial court erred in its findings of fact and conclusions of law, and do not provide an "alternate basis" for supporting the court's award of damages. The correct method for plaintiff to have raised this question on appeal was to have raised the issue on cross appeal. *See Wilson Realty & Constr., Inc. v. Asheboro-Randolph Bd. of Realtors*, 134 N.C. App. 468, 473, 518 S.E.2d 28, 32 (1999); *Cox v. Robert C. Rhein Interest, Inc.*, 100 N.C. App. 584, 588, 397 S.E.2d 358, 361 (1990). Plaintiff failed to properly cross-appeal and thus waived this Court's consideration of the issue on appeal. *See Williams v. N.C. Dep't of Env't & Natural Res.*, 166 N.C. App. 86, 95, 601 S.E.2d 231, 236 (2004); *Lewis v. Edwards*, 147 N.C. App. 39, 51-52, 554 S.E.2d 17, 24-25 (2001). Therefore, we dismiss plaintiff's final cross-assignment of error.

We therefore hold the trial court properly found that plaintiff established a *prima facie* case of defendant's trespass, and that defendant failed to establish that it had any affirmative defense to the trespass. We also hold the trial court's award of damages to plaintiff was proper.

Affirmed.

Judges HUDSON and STEELMAN concur.