PAULA LOWERY PUGH v. LARRY SCOTT PUGH, FREDDIE GLENN PUGH, THELMA PUGH, AND PAUL CLIFTON; RE: MATTER OF B. ERVIN BROWN, II; RULE 11 SANCTIONS ORDERS OF 8 FEBRUARY 1991, 23 OCTOBER 1991

No. 9221SC442

(Filed 20 July 1993)

**Rules of Civil Procedure § 11 (NCI3d) — allegations of complaint — reasonable inquiry into factual bases — sanctions against attorney not warranted**

Plaintiff's attorney made a "reasonable inquiry" into the factual bases for the allegations contained in the complaint, and therefore the sanctions imposed against him, including a written reprimand and attorney's fees, were not warranted. The court on appeal declines to adopt the bright-line rule that when, as in the present case, an attorney forecasts substantial evidence and survives a motion for summary judgment, the

PUGH v. PUGH

[111 N.C. App. 118 (1993)]

allegations presented in the complaint are necessarily well-grounded in fact and not a proper basis for imposing Rule 11 sanctions.

**Am Jur 2d, Pleading §§ 339 et seq.**

Appeal by attorney for the plaintiff from Orders entered 8 February 1991 and 23 October 1991 by Judge Melzer A. Morgan, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 1 April 1993.

*White and Crumpler, by Fred G. Crumpler, for appellant B. Ervin Brown.*

*Wilson, Biesecker, Tripp & Sink, by Joe E. Biesecker, for appellees Freddie Glenn Pugh, Thelma Pugh, and Paul Clifton.*

WYNN, Judge.

The imposition of Rule 11 sanctions against Attorney B. Ervin Brown, II arose out of a civil action by Paula Lowery Pugh against her estranged common-law husband, Larry Scott Pugh, members of his family, and his business associates.

Following the estrangement of Paula and Larry Scott Pugh, various defendants took out criminal warrants against Paula for several misdemeanor offenses, including communicating threats and trespass ("the first set of warrants"). Paula subsequently retained the legal services of High Point attorney Debra Irene Johnson, to whom she told of her experiences with the defendants. These experiences consisted of being evicted from her trailer home by defendant Thelma Johnson, on whose land the trailer was located, and being abducted and threatened with death by defendant Freddie Glenn Pugh.

Pursuant to Attorney Johnson's advice, Paula recorded her telephone conversations with Larry Scott Pugh, Freddie Glenn Pugh, and others. This was done so that Paula could document the Pugh family's threats that they were going to run her out of the county and that Freddie Pugh had held a gun to Paula's head. The recordings were also made in an effort to substantiate the Pugh family's contentions regarding the existence of a stolen car and auto parts theft ring and their political clout.

**PUGH v. PUGH**

[111 N.C. App. 118 (1993)]

Lexington attorney Joe Biesecker, as representative of the defendants and as special prosecutor, and Attorney Johnson reached a settlement whereby the defendants agreed to drop the criminal charges represented by the first set of warrants in exchange for Paula's agreeing to move out of Davidson County. The defendants, however, subsequently reinstated the criminal charges ("the second set of warrants") and Attorney Johnson, who was in the process of closing her North Carolina practice and moving out of state, contacted Attorney B. Ervin Brown, II. She explained the details of the Pugh case and informed him that Paula was extremely agitated and upset due to her fear of the Pughs and their continual harassment of her. Attorney Johnson also told Attorney Brown that Paula was destitute, had no family to whom she could turn, and, despite the fact that Paula was in poor health, the Pughs had canceled her health insurance.

Based on the facts related to him by Attorney Johnson, his own observations of Paula's mental state and her credibility, his review of the transcripts from the tape-recorded telephone conversations between Paula and Larry Scott Pugh and Freddie Glenn Pugh, his cross-examination of the defendants during the criminal proceedings relating to the second set of warrants, and the trial court's dismissal of all the criminal charges but one at the close of the state's evidence, Attorney Brown filed the Complaint which became the basis for the sanctions imposed against him.

The Complaint alleged five claims for relief: conversion of property against Freddie Glenn Pugh and Thelma Pugh; abuse of process against Freddie Glenn Pugh, Thelma Pugh, and Paul Clifton; malicious prosecution against Freddie Glenn Pugh, Thelma Pugh, and Paul Clifton; assault and battery against Freddie Glenn Pugh and Paul Clifton; and intentional infliction of emotional distress against Larry Scott Pugh, Freddie Glenn Pugh, Thelma Pugh, Paul Clifton, and Shirley Allen. The trial court considered the abuse of process and the malicious prosecution claims twice each, as related to the first set of warrants and the second set of warrants. The trial court also recognized three different categories of conspiracy to intentionally inflict emotional distress: forcing the plaintiff to leave the county; keeping silent regarding unlawful business; and turning over documents of alleged illegal business activity.

On 7 July 1989, the trial court dismissed the defendant Shirley Allen for failure of the Complaint to state a claim against her.

## PUGH v. PUGH

[111 N.C. App. 118 (1993)]

Prior to trial, the defendants moved for summary judgment, which motion was subsequently denied. At the close of the plaintiff's evidence, the defendants moved for a directed verdict upon all claims, which motion was granted in part and denied in part. Regarding the first cause of action, the claim for conversion was dismissed as to Freddie Glenn Pugh, but not as to Thelma Pugh; the second cause of action, the abuse of process claim, was dismissed as to Freddie Glenn Pugh, Thelma Pugh, and Paul Clifton as it related to both the first and second sets of warrants; the third cause of action, the malicious prosecution claim, was dismissed as to Thelma Pugh as it related to the second set of warrants; and the fifth cause of action, the conspiracy to intentionally inflict emotional distress, was dismissed entirely as against Thelma Pugh and, as to Larry Scott Pugh, Freddie Glenn Pugh and Paul Clifton, was dismissed as it related to causing the plaintiff to turn over documents alleging illegal business activities.

A subsequent motion for a directed verdict made at the close of all the evidence was denied. The jury ultimately returned a verdict in favor of the defendants as to each of the remaining claims, except the claim for malicious prosecution against Paul Clifton.

The defendants moved for sanctions against the plaintiff and against Attorney Brown, claiming generally and without specifics that the lawsuit had been commenced in violation of the certification requirements of Rule 11(a). The trial judge issued an Order finding that Attorney Brown had failed to conduct an adequate pretrial factual investigation as to the plaintiff's claims of intentional infliction of emotional distress and abuse of process, and that a written reprimand was in order for the contents of paragraph six of the plaintiff's Complaint. From that Order, Attorney Brown appeals.

———————

Initially, we note that the appellant has made a motion to suspend the rules of appellate procedure with regard to his brief as submitted to this Court. This motion comes in response to the appellees' brief, in which they argue that the appeal should be dismissed because the appellant violated Rules 10(c)(1), 10(c)(3), and 28(b)(5) of the Rules of Appellate Procedure. The appellant has rectified his errors in his reply brief with attached errata sheet. Pursuant to Rule 2 of the Rules of Appellate Procedure, we hereby

grant the motion to suspend the rules of appellate procedure so as to prevent a manifest injustice to the appellant. N.C. R. App. P. 2.

The appellant makes six assignments of error all of which contend, essentially, that the trial court erred in granting the Rule 11 sanctions. For the reasons that follow, we find that the imposition of sanctions was error and we reverse the decision of the trial court.

Rule 11(a) of the Rules of Civil Procedure provides in pertinent part that

[t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

N.C. Gen. Stat. § 1A-1, Rule 11(a) (1990). An attorney has satisfied the "reasonable inquiry" requirement if " 'a reasonable person under the same or similar circumstances would have terminated his or her inquiry and formed the belief that the claim was warranted under existing law . . . .' " *Jerry Bayne, Inc. v. Skyland Indus., Inc.,* 108 N.C. App. 209, 214, 423 S.E.2d 521, 523 (1992) (quoting *Bryson v. Sullivan,* 330 N.C. 644, 661-662, 412 S.E.2d 327, 336 (1992) ), *aff'd,* 333 N.C. 783, 430 S.E.2d 266 (1993).

Upon finding that the provisions of Rule 11 have been violated, the trial court must impose sanctions against the plaintiff and/or the plaintiff's counsel. Our Supreme Court has clearly established the standard of appellate review of the trial court's imposition of sanctions. Such review is *de novo,* and in that review the appellate court must determine "(1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence." *Turner v. Duke Univ.,* 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989), *appeal after remand,* 101 N.C. App. 276, 399 S.E.2d 402, *disc. rev. denied,* 329 N.C. 505, 407 S.E.2d 552 (1991).

PUGH v. PUGH

[111 N.C. App. 118 (1993)]

In the present case, the trial court found that the Complaint was not filed for an improper purpose, nor was it without basis in existing law. Rather, the sanctions were imposed because the trial court found that certain portions of the Complaint were not well-grounded in fact. Specifically, the trial court pointed to three allegations in the Complaint upon which it based its imposition of sanctions. We address each of those in turn below.

First, the trial court imposed the sanction of a written reprimand on Attorney Brown based on the contents of paragraph six of the Complaint. That paragraph read, in pertinent part, as follows:

In late December, 1987, or early January, 1988, defendant L.S. Pugh confided to plaintiff that he, defendant, Freddie Glenn Pugh (F.G. Pugh), and defendant Paul Clifton (Clifton) were involved in a highly lucrative auto theft-drug ring *which defendant L.S. Pugh alleged* also involved certain local attorneys, law enforcement officers and judges.

(Emphasis added). The trial court found as fact that Attorney Brown "did not make a reasonable inquiry" into the allegations "that a highly lucrative auto-theft ring involving certain local attorneys and judges existed" prior to filing the Complaint. Further, the trial court found that "[a]n allegation of official judicial or attorney misconduct is both highly implausible and particularly implausible . . . . The plaintiff totally misinterpreted [the taped telephone conversations between Paula and Freddie]. . . . [The statements made by Freddie Pugh regarding the Pugh family and its attorney buying off law enforcement were] . . . made in a bluffing manner to deal with a person who was very persistent in wanting to call and talk to Pugh family members and to see if she and Larry Scott Pugh could get back together. Many of the tapes between the plaintiff and Larry Scott Pugh and Freddie Pugh are argumentative . . . ." In its findings of fact, the trial court stated that Attorney Brown should have looked at the information recorded in the telephone conversations skeptically, and that his assuming "there was something rotten in Davidson County between lawyers and judges was reckless."

Based on its findings regarding paragraph six, the trial court concluded as a matter of law that

With regard to the allegation in paragraph 6 that a highly lucrative auto-theft, drug ring involved certain local attorneys

and judges, Attorney Brown did not make the required prefiling complaint inquiry required for such an unplausible assertion.

. . . .

Regarding the allegations contained in paragraph 6 of the complaint that lawyers and judges were involved in official misconduct, the Court determines that an appropriate sanction is a written reprimand of Attorney Brown.

The evidence in the record does not support the trial court's imposition of sanctions against Attorney Brown based on the contents of paragraph six. The trial court's analysis of the paragraph is clearly based on its misunderstanding the contents of that paragraph. The complaint does not contain accusations that local attorneys, law enforcement officers and judges are involved in illegal activity. Rather, the complaint alleges that Larry Scott Pugh *told the plaintiff* that such individuals were involved in that activity. We find that, based on the taped telephone conversations between Paula and Freddie Pugh and between Paula and Larry Scott Pugh, Brown's conversations with Paula's former attorney regarding the Pugh family, and his conversations with Paula constituted a reasonable inquiry to determine whether the statements in paragraph six were well-grounded in fact.

The second basis upon which the trial court imposed sanctions against Attorney Brown, in the form of attorneys' fees, is contained in paragraph eleven of the Complaint, which reads in pertinent part that

[D]efendants F.G. Pugh, Thelma Pugh, Paul Clifton and Shirley Allen respectively took out criminal warrants against plaintiff charging her with misdemeanor trespass and communicating threats, all of which warrants were taken for the ulterior purpose of . . . (2) forcing plaintiff to hand over to these defendants or their attorney, Joe E. Biesecker, tapes made by the plaintiff of certain incriminating phone conversations between herself and one or more of the named defendants regarding the aforementioned auto theft-drug ring.

In determining that this allegation was not well-grounded in fact, the trial court found as fact that Attorney Brown "did not make a reasonable inquiry into [this] portion of paragraph 11 of the complaint. . . ." In so finding, the trial court noted that

**PUGH v. PUGH**

[111 N.C. App. 118 (1993)]

> [T]he disclosure of the existence of these taped phone conversations did not occur until after these warrants were taken out. . . . It was not credible that the first set of warrants were taken out to force the plaintiff to hand over the tapes to the defendants or their attorney Joe C. Biesecker. . . . It was not impractical for Attorney Brown to check out the sequence of dates . . . .

The record confirms a sequence of events in the present case which establishes that the first set of criminal warrants was taken out before the Pugh family had any knowledge of the taped telephone conversations. Nevertheless, the evidence in the record, including the taped telephone conversations, further suggests that, even if the first set of warrants was taken out before the Pugh family had notice of the tapes, the charges were not dismissed, or were reinstated through a second set of warrants, in the hopes of having the tapes turned over to the Pughs. Rule 11 is not designed to pick apart each sentence of the Complaint and quarrel with its wording, which is what this Court would condone if we affirm the sanctions based on paragraph eleven. There is evidence in the record to suggest that the warrants were ultimately used in an effort to obtain the taped conversations and, as a whole, the allegations contained in paragraph eleven, as well as in the paragraphs which follow it, are well-grounded in fact. *See In re Kunstler*, 914 F.2d 505, 515 (4th Cir. 1990), *cert. denied*, --- U.S. ---, 113 L.Ed.2d 669 (1991).

The third, and final, basis upon which the trial court imposed sanctions, in the form of attorneys' fees, was the plaintiff's claim for intentional infliction of emotional distress. The reasons for sanctions on this basis are contained in the trial court's following finding of fact:

> Before filing the complaint, the plaintiff's attorney did not make a reasonable inquiry into whether the plaintiff suffered severe emotional distress proximately caused by the actions of the defendants. Such allegation was not well-grounded in fact.

The defendants in the present case appear to suggest that Attorney Brown should have had the plaintiff examined by a psychiatrist in order to determine whether she was paranoid. They suggest, further, that Attorney Brown should have conducted in-depth interviews with the plaintiff's former employers and roommates. We find, however, that it was not unreasonable for Attorney

Brown to sign the Complaint alleging intentional infliction of emotional distress based on the taped conversations, his conversations with the plaintiff's former attorney, who informed Attorney Brown that the plaintiff's hands often shook, and his interviews with the plaintiff. Attorney Brown correctly asserts in his brief that, even if the defendant was found to be suffering from a psychological disorder, and even if there were other factors, separate and apart from the actions of the Pugh family, which may have contributed to her emotional distress, the defendants are not absolved from any emotional distress they may have imposed upon the plaintiff.

We hold, based on the foregoing discussion, that Attorney Brown made a "reasonable inquiry" into the factual bases for the allegations contained in the Complaint and that, therefore, the sanctions imposed against him were not warranted. In so holding, we note that there is a school of thought which contends that when, as in the present case, an attorney forecasts substantial evidence and survives a motion for summary judgment, the allegations presented in the Complaint are necessarily well-grounded in fact and not a proper basis for imposing Rule 11 sanctions. *See* William Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 189 (1988); *see also Needle v. White, Mindel, Clarke and Hill*, 568 A.2d 856, 864 (Md. App. 1990), *cert. denied*, 573 A.2d 1338 (Md. App. 1990) (once the court allows a case to proceed to trial, it cannot thereafter decide that the case was brought in bad faith and without substantial justification). Because we have resolved the case at bar pursuant to a more traditional Rule 11 analysis, however, we decline to consider the merits of adopting the bright-line rule presented by this alternative reasoning. Instead we simply recognize its presence in the law and leave an in-depth analysis of that reasoning for future consideration.

For the foregoing reasons, the decision of the trial court is,

Reversed.

Judges WELLS and GREENE concur.