STATIC CONTROL COMPONENTS, INC., Plaintiff-appellant v.
WILLIAM H. VOGLER, JR., Defendant-appellee

No. COA01-1077

(Filed 3 September 2002)

### 1. Pleadings— Rule 11 sanctions—complaint not well-grounded in fact or based upon reasonable inquiry

The trial court did not err in a trade secrets and breach of contract case by imposing sanctions against plaintiff corporation under N.C.G.S. § 1A-1, Rule 11 based on the verified complaint not being well-grounded in fact or based upon a reasonable inquiry because the complaint alleged then-existing direct competition and ongoing misappropriation and disclosure of trade secrets, and both of these allegations were directly contradicted by the deposition testimony of plaintiff's operating manager and plaintiff's president and CEO.

### 2. Pleadings— Rule 11 sanctions—complaint filed for improper purpose

The trial court did not err in a trade secrets and breach of contract case by imposing sanctions against plaintiff corporation under N.C.G.S. § 1A-1, Rule 11 based on the trial court's conclusion that the complaint was filed for an improper purpose, because: (1) an improper purpose is for a purpose other than one to vindicate rights or to put claims of right to a proper test; and (2) the testimony of plaintiff's president and CEO established that the purpose of the lawsuit was not to redress injury by defendant, but to extract from defendant another letter promising to uphold the parties' agreement.

### 3. Pleadings— Rule 11 sanctions—survival of summary judgment motion not a bar

The trial court did not err in a trade secrets and breach of contract case by imposing sanctions against plaintiff corporation under N.C.G.S. § 1A-1, Rule 11 even though plaintiff had obtained a preliminary injunction and had survived defendant's summary judgment motion, because the denial of a summary judgment motion is not a bar to Rule 11 sanctions since a claim may appear to raise legitimate and genuine issues before trial but later be unmasked as not well-founded in fact.

**4. Pleadings— Rule 11 sanctions—timeliness of motion**

The trial court did not err in a trade secrets and breach of contract case by concluding that defendant moved for N.C.G.S. § 1A-1, Rule 11 sanctions in a timely fashion, because: (1) the impropriety of plaintiff's claims only came into focus during discovery; (2) plaintiff voluntarily dismissed the action four days after its CEO was deposed, and defendant wrote a letter to plaintiff seeking a settlement three weeks after the dismissal; and (3) defendant moved for sanctions after plaintiff failed to respond after three months to defendant's attempt to settle the case.

Appeal by plaintiff from order entered 31 May 2001 by Judge J. B. Allen, Jr. in Lee County Superior Court. Heard in the Court of Appeals 4 June 2002.

*Static Control Components, Inc., by William L. London, III, for plaintiff-appellant.*

*Moore & Van Allen, P.L.L.C., by Andrew B. Cohen and John E. Slaughter, III, for plaintiff-appellant.*

*Staton, Perkinson, Doster, Post, and Silverman, P.A., by Jonathan Silverman and Charles M. Oldham, III, for defendant-appellee.*

BIGGS, Judge.

Plaintiff (Static Control Components, Inc.) appeals from an order imposing sanctions under N.C.G.S. § 1A-1, Rule 11. We affirm the trial court.

Plaintiff, a corporation with over 1000 employees, is engaged in the production and sale of components used in the remanufacture of toner cartridges for computer laser printers. Plaintiff sells certain constituent components used in the remanufacture process and has never sold finished remanufactured cartridges. Defendant was employed by plaintiff from 1995 to 2000. Shortly after he was hired, defendant signed an agreement promising not to reveal any information pertaining to "customers, suppliers, competitors, and manufacturing processes" of plaintiff's products, both those currently manufactured as well as "products in various stages of development." The agreement provided that it would remain in effect for three years after defendant quit working for plaintiff. In January, 2000, defendant left plaintiff's employ. Shortly thereafter, he and another former

employee of plaintiff's, Walter Huffman, started a small remanufacturing business. The two men had no other employees, and their operation was confined to one 300 square foot shed. They sold only the finished cartridges, but not the remanufacturing components offered by plaintiff.

On 12 January 2000, plaintiff wrote to defendant stating that it considered defendant's remanufacture business to be in "direct competition" with plaintiff, and to constitute "a violation of the December 8th agreement." The letter asked defendant to reaffirm his intention to honor the agreement. Defendant replied through counsel that he would "honor the terms of his agreement with [plaintiff] to the extent that the agreement is enforceable." Plaintiff wrote defendant again, asking "whether it is [defendant's] position that the . . . [agreement] is unenforceable, and whether he will abide by [plaintiff's] interpretation of the agreement[.]" Defendant did not respond to this letter.

On 6 March 2000, plaintiff filed suit against defendant, claiming unlawful misappropriation of trade secrets and breach of contract. The complaint sought compensatory and punitive damages and injunctive relief. Plaintiff alleged that defendant had "already begun to disclose [plaintiff's] trade secrets to others," and had "willfully and maliciously misappropriated, misused and/or disclosed [plaintiff's] technical and business trade secrets[.]" The complaint also alleged that defendant's remanufacture business violated the non-compete agreement and was "in competition with [plaintiff.]" The same day that the complaint was filed, plaintiff obtained an *ex parte* temporary restraining order which prohibited defendant from misappropriating or disseminating plaintiff's trade secrets. On 10 April 2000, plaintiff obtained a preliminary injunction that generally enjoined defendant from revealing plaintiff's non-public information, but expressly permitted defendant to continue remanufacturing cartridges, without prejudice to either party to argue the issue at trial.

In April, 2000, defendant deposed William J. Gander, plaintiff's operations manager. Gander testified that plaintiff did not sell remanufactured cartridges, but planned to sell them at some future date, although he acknowledged that this would put plaintiff in direct competition with its customers. In June, 2000, however, in response to customer concerns, plaintiff's website posted a notice stating that they were not planning to make remanufactured toner cartridges. Gander also testified that to the best of his knowledge, defendant had not disclosed any of plaintiff's trade secrets.

On 15 December, 2000, defendant deposed Edwin Swartz, plaintiff's president and CEO. Swartz testified that, although the possibility of plaintiff's selling remanufactured cartridges had been "discuss[ed]" from time to time," plaintiff had "no plans to remanufacture toner cartridges." He acknowledged that defendant was not competing with plaintiff, had not disclosed any trade secrets, and admitted that he had refused to sell components to defendant.

On 19 December 2000, four days after Swartz's deposition, plaintiff voluntarily dismissed its lawsuit, pursuant to N.C.G.S. § 1A-1, Rule 41(b). On 9 January 2001, defendant, through counsel, wrote to plaintiff, seeking a settlement of the matter. Defendant stated that the lawsuit had "no basis in fact"; that plaintiff had not "been able to offer any evidence of any . . . disclosure of trade secrets and . . . no evidence of any competition by [defendant]; and that "this lawsuit was simply a vindictive act." Defendant informed plaintiff that he believed defendant was entitled to sanctions under N.C.G.S. § 1A-1, Rule 11. He expressed a willingness to (1) accept a cash settlement "to compensate [defendant] for the expense and trouble" of "defending this frivolous law action[,]" and to (2) execute an agreement not to disclose plaintiff's pricing practices or suppliers. Plaintiff did not respond to defendant's settlement offer, and on 25 April 2001, defendant filed a motion for Rule 11 sanctions against defendant. The motion was heard in May, 2001, and the trial court entered an order 31 May 2001, concluding that "the verified pleading filed by [plaintiff] in this action was not based upon a reasonable inquiry and was not well grounded in fact[, and] . . . was filed for the improper purpose of harassing the defendant[.]" The trial court awarded defendant $5918.00 in sanctions, the amount of his documented expenses in the case. Plaintiff appeals from this order.

---

N.C.G.S. § 1A-1, Rule 11 (2001) provides in pertinent part:

. . . Every pleading . . . shall be signed by at least one attorney of record . . . [which] constitutes a certificate by him that he has read the pleading, . . . [and] that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law . . . and that it is not interposed for any improper purpose[.] . . . If a pleading . . . is signed in violation of this rule, the court . . . shall impose upon the person who signed it, a represented party, or both, an appropriate sanction. . . .

N.C.G.S. § 1A-1, Rule 11(a). "There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose. . . . A violation of any one of these requirements mandates the imposition of sanctions under Rule 11." *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365, (citing *Bryson v. Sullivan*, 330 N.C. 644, 655, 412 S.E.2d 327, 332 (1992)), *disc. review denied*, 337 N.C. 691, 448 S.E.2d 521 (1994). On appeal, the trial court's decision whether to impose sanctions for a violation of Rule 11 is "reviewable *de novo* as a legal issue." *Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989), *disc. review denied*, 329 N.C. 505, 407 S.E.2d 552 (1991). If this Court determines that (1) the trial court's findings of fact are supported by sufficient evidence; (2) these findings support the court's conclusions of law; and (3) the conclusions of law support the judgment, it "must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions[.]" *Polygenex Intern., Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 249, 515 S.E.2d 457, 460 (1999).

The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even when the record includes other evidence that might support contrary findings. *Institution Food House v. Circus Hall of Cream*, 107 N.C. App. 552, 556, 421 S.E.2d 370, 372 (1992). Further, findings of fact to which plaintiff has not assigned error and argued in his brief are conclusively established on appeal. *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998).

In the instant case, although plaintiff assigned error to findings of fact numbers 13, 22, 23, 25, and 28, because defendant does not argue in his brief "that these findings of fact are not supported by . . . evidence in the record, this Court is bound by the trial court's findings of fact." *In re Pope*, 144 N.C. App. 32, 36 n.3, 547 S.E.2d 153, 156 n.3, *aff'd*, 354 N.C. 359, 554 S.E.2d 644 (2001).

I.

**[1]** Plaintiff argues first that the trial court erred by concluding that the verified complaint filed in this action was not well grounded in fact, or based upon a reasonable inquiry. We disagree.

Analysis of the factual sufficiency of a complaint requires the court to determine "(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well

grounded in fact." *Page v. Roscoe, LLC*, 128 N.C. App. 678, 681-82, 497 S.E.2d 422, 425 (1998). An inquiry is reasonable if "given the knowledge and information which can be imputed to a party, a reasonable person under the same or similar circumstances would have terminated his or her inquiry and formed the belief that the claim was warranted under existing law[.]" *Bryson v. Sullivan*, 330 N.C. 644, 661-62, 412 S.E.2d 327, 336 (1992).

The order entered in the case *sub judice* included the following pertinent findings of fact:

. . .

13. The Complaint is not phrased in terms of [plaintiff] admitting that it had no evidence or information that [defendant] had misappropriated any trade secrets or had competed with it or that it merely had a reasonable apprehension of irreparable loss, but rather makes affirmative declarations that [defendant] was competing with it and was misappropriating its trade secrets. . . . In fact the only inquiry made by [plaintiff] as revealed by the record in this action are the letters between [counsel for the parties].

. . . .

15. On December 15, 2000, Defendant deposed the CEO of [plaintiff], Mr. Edwin Swartz. Mr. Swartz is a hands on manager who stays abreast of all development in these companies. He is the founder of these companies. Mr. Swartz testified in part as follows. . . .

Finding of fact number 15 also includes several pages of excerpts from Swartz's deposition, indicating that plaintiff (1) did not plan to enter the toner cartridge remanufacture business, and (2) had no evidence that defendant had disclosed trade secrets, competed with plaintiff, or failed to honor the agreement. These findings, which are fully supported by the record, are conclusive on appeal.

Notwithstanding these findings, plaintiff contends that defendant's letter stating that he would honor the agreement "to the extent it was legally enforceable" entitled them to conclude that defendant's "disclosure of [plaintiff's] trade secrets and competition with plaintiff was imminent[.]" We find nothing in defendant's letter to suggest that his disclosure of plaintiff's trade secrets was "imminent." Moreover, the complaint does not allege potential or future disclosure of trade secrets, but "makes affirmative declarations that [defendant] was competing with it and was misappropriating its trade secrets."

Plaintiffs also argue that Gander's testimony, that plaintiff planned to sell remanufactured cartridges in the future, establishes a factual basis for the complaint. However, contradictory testimony from Swartz, that plaintiff had no plans to sell remanufactured cartridges, fully supports the trial court's finding that the complaint was not well grounded in fact. We find unavailing plaintiff's attempts to distinguish between Swartz's knowledge and that of plaintiff, given that he is plaintiff's CEO. We are likewise unpersuaded by plaintiff's suggestion, that at the time the complaint was drafted it planned to remanufacture cartridges in the future, and only later decided against it. As found by the trial court, the complaint alleged then-existing direct competition, and ongoing misappropriation and disclosure of trade secrets; both of these allegations were directly contradicted by the deposition testimony of Gander and Swartz.

We conclude that the trial court's findings of fact were supported by the evidence, and support the court's conclusion that the complaint was "not well grounded in fact" and "not formed after a reasonable inquiry." This assignment of error is overruled.

II.

**[2]** Plaintiff next argues that the trial court erred by concluding that the complaint was filed for an improper purpose. We disagree.

"The improper purpose prong of Rule 11 is separate and distinct from the factual and legal sufficiency requirements." *Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992). Thus, "[e]ven if the complaint is well grounded in fact and in law, it may nonetheless violate the improper purpose prong of Rule 11." *McClerin v. R-M Industries, Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995). "[T]he relevant inquiry is whether the existence of an improper purpose may be inferred from the alleged offender's objective behavior[, . . . and an] improper purpose is any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992) (citation omitted).

In the case *sub judice*, the trial court concluded that the complaint was filed "for the improper purpose of harassing the Defendant[.]" We hold that this conclusion was amply supported by the court's findings of fact, and by the evidence upon which they were based.

Swartz testified that "what this case is all about" was that plaintiff was "dissatisfied with [defendant's] replies" to their letters. Swartz admitted that defendant had not violated the agreement, as was alleged in the complaint, and that there was no evidence that defendant was unwilling to abide by the agreement. Nonetheless, Swartz considered defendant's promise to honor the agreement "to the extent it is enforceable" to be "hedging,". and demanded that defendant expressly state "Yes, I will live up to that agreement." Swartz testified that as soon as defendant wrote a letter that Swartz found satisfactory, he would instruct his attorney to drop the suit:

> If Mr. Vogler will say unqualified "I will abide by the agreement in this case," [defendant] won't have to pay you [defendant's attorney] any more money and . . . we'll stop all this foolishness. All you have to do is say that "I will abide by that agreement" and this case is over.

We conclude that Swartz's testimony establishes that the purpose of the lawsuit was not to redress injury by defendant, but to extract from defendant another letter promising to uphold the agreement. This is an "improper purpose" which supports the trial court's imposition of sanctions.

Plaintiff also asserts error in the trial court's finding of fact number 23, in which the trial court summarized certain testimony by Huffman, indicating that Swartz disliked defendant, and that Swartz believed in intimidation of employees and in punishing competitors. Plaintiff argues that Huffman's testimony was inadmissible under North Carolina Rules of Evidence 404(a), and should not have been considered by the court in its analysis of improper purpose. The defendant, on the other hand, contends it was admissible under Rule 404(b) to show Swartz's intent, motive, and plan. We find, however, that even assuming, *arguendo*, that the testimony was inadmissible, that the trial court's other findings of fact independently support its conclusion that the complaint was filed for a purpose "other than one to vindicate rights . . . or to put claims of right to a proper test." This assignment of error is overruled.

### III.

[3] Plaintiff argues next that the trial court's imposition of Rule 11 sanctions was inappropriate, given that plaintiff had obtained a preliminary injunction and had survived defendant's summary judgment motion.

STATIC CONTROL COMPONENTS, INC. v. VOGLER

[152 N.C. App. 599 (2002)]

Plaintiff urges this Court to adopt the "bright line rule" discussed in *Pugh v. Pugh*, 111 N.C. App. 118, 126, 431 S.E.2d 873, 878 (1993), and to hold that whenever a party "survives a motion for summary judgment, the allegations presented in the Complaint are necessarily well-grounded in fact and not a proper basis for imposing Rule 11 sanctions." In *Pugh*, this Court did not adopt the above test, but simply acknowledged that it represented one "school of thought." In other opinions issued since then, this Court has expressly declined to adopt the rule discussed in *Pugh. See Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 660, 464 S.E.2d 47, 55-56 (1995) (denial of summary judgment motion no bar to Rule 11 sanctions, because a "*claim may appear to raise legitimate and genuine issues before trial*" but later "*be unmasked as not well-founded in fact*[.]") (citation omitted). We decline to adopt the rule, urged by plaintiff, barring Rule 11 challenges to any case that has survived a summary judgment motion. This assignment of error is overruled.

IV.

[4] Lastly, plaintiff argues that the trial court erred by concluding that defendant moved for Rule 11 sanctions in a timely fashion.

Although Rule 11 does not "contain[] explicit time limits for filing Rule 11 sanctions motions[,]" case law establishes that "a party should make a Rule 11 motion within a reasonable time after he discovers an alleged impropriety." *Renner v. Hawk*, 125 N.C. App. 483, 491, 481 S.E.2d 370, 374, *disc. review denied*, 346 N.C. 283, 487 S.E.2d 553 (1997) (citation omitted).

The question of whether a Rule 11 motion was filed "within a reasonable time" is reviewable *de novo*, "under an objective standard." *Griffin v. Sweet*, 136 N.C. App. 762, 765, 525 S.E.2d 504, 506-07 (2000). In *Griffin*, this Court held that a Rule 11 motion was untimely where the movant delayed filing for thirteen months after the North Carolina Supreme Court had denied defendant's petition for discretionary review, and there was no activity in the case in the interim. On the other hand, in *Renner*, this Court upheld the filing of a Rule 11 motion more than six months after the action was filed, noting that "the alleged impropriety became apparent . . . only during the course of discovery."

We conclude that the instant case is similar to *Renner*, in that the impropriety of plaintiff's claims only came into focus during discovery. In its order, the trial court found that the letter of 9 January was:

a reasonable attempt by the Defendant to try to voluntarily resolve the issues arising out of this action having been filed by [plaintiff]. [Plaintiff] never responded to this letter to attempt to resolve this or to explain why it had filed the law suit. After waiting a decent interval of time, the Defendant filed this Motion on April 25, 2001. It is the opinion of this Court that the Defendant did in fact timely file his Rule 11 Motion.

We conclude that the record supports the trial court's finding and conclusion. The record indicates that, although defendant contended from the start that the suit was baseless, it was the depositions of Gander and Swartz which unequivocally exposed the absence of any factual basis for the allegations in the complaint. On 19 December 2000, within a week of defendant's deposing plaintiff's CEO, plaintiff dismissed this action. Thereafter, defendant promptly sought a settlement, writing to plaintiff on 9 January 2001, to propose certain terms. When plaintiff failed to respond after three months, defendant filed the motion for Rule 11 sanctions. We conclude that this evidence supports the trial court's findings and conclusion. This assignment of error is overruled.

For the reasons discussed above, we find no error in the trial court's award of sanctions under Rule 11. Accordingly, the trial court's order is

Affirmed.

Judges GREENE and HUDSON concur.