KURE Corp. v. Peterson, 2017 NCBC 1.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 13776

KURE CORP.,

        Plaintiff,

v.

DAVID PETERSON, STEPHANIE
STAFFIERI, and FRANK
STAFFIERI,

        Defendants.

ORDER AND OPINION ON
DEFENDANTS'
MOTION FOR SANCTIONS AND
MOTIONS TO DISMISS

1.　**THIS MATTER** is before the Court upon (i) Defendant David Peterson's ("Peterson") Rule 12(b)(6) Motion to Dismiss, (ii) Peterson's Rule 17 Motion to Dismiss, (iii) Defendants Stephanie Staffieri ("Staffieri") and Frank Staffieri's (the "Staffieris") (together with Peterson, the "Defendants") Rule 12(b)(6) Motion to Dismiss, (iv) the Staffieris' Rule 17 Motion to Dismiss (collectively, the "Motions to Dismiss"), and (v) Defendants' Rule 11 Motion for Sanctions ("Rule 11 Motion") in the above-captioned case.　Based upon its review of the Motions, the briefs in support of and in opposition to the Motions, the record before the Court, and the arguments of counsel at a December 15, 2016 hearing in this action, the Court hereby **DENIES** the Motions to Dismiss as moot, **DENIES** the Rule 11 Motion, and **FINDS** and **CONCLUDES** as follows:

> *Rayburn Cooper & Durham, P.A., by C. Richard Rayburn, Jr. and Ross R. Fulton, for Plaintiff KURE Corp.*

> *Erwin, Bishop, Capitano, & Moss, P.A., by Joseph W. Moss, Jr., for Defendant David Peterson.*

*Moore & Van Allen, PLLC, by Mark A. Nebrig and Kara N. Bitar, for Defendants Stephanie Staffieri and Frank Staffieri.*

*Poyner & Spruill, LLP, by Cynthia L. Van Horne and E. Fitzgerald Parnell, III, for Nexsen Pruet, LLC and James C. Smith.*

Bledsoe, Judge.

## I.

## BACKGROUND

2. Plaintiff initiated this action by filing its Complaint on August 2, 2016. Defendants filed the Motions to Dismiss on October 4, 2016 and shortly thereafter filed the Rule 11 Motion on October 18, 2016.

3. Defendants' Rule 11 Motion seeks sanctions against Plaintiff KURE Corp. ("KURE" or "Plaintiff") and Nexsen Pruett, LLC and James C. Smith ("Smith")—Plaintiff's former counsel who drafted the Complaint—for alleged Rule 11 violations in signing and filing Plaintiff's Complaint.[1] On October 24, 2016, the Court granted Plaintiff's motion for substitution of counsel. Plaintiff's former counsel remains subject to the Court's jurisdiction only for purposes of Defendants' Rule 11 Motion.

4. The Court scheduled the Motions for hearing on December 15, 2016. While the Motions to Dismiss were pending, Plaintiff filed as of right an Amended Complaint on November 18, 2016. As discussed below, the filing of the Amended Complaint has mooted the Motions to Dismiss.

---

[1] Kathleen B. Burchette was also formerly counsel of record along with Smith. However, Defendants' reply brief clarifies that Defendants are not asserting the Rule 11 Motion against Ms. Burchette, as she had no role in drafting the Complaint. (Defs.' Reply Br. Supp. Mot. Rule 11 Sanctions 1.)

5.      Plaintiff's original Complaint asserts claims for fraud, unfair and deceptive trade practices, and breach of fiduciary duty.  The Complaint generally alleges that Defendants, who owned Carolina Distributors & Service, LLC ("CDS"), made fraudulent misrepresentations during the negotiations for Plaintiff's purchase of CDS.  Plaintiff additionally alleges that Peterson's and Staffieri's mismanagement as officers and directors of KURE amounts to breaches of their fiduciary duties to Plaintiff.  Plaintiff's Amended Complaint asserts a single claim for breach of fiduciary duty and eliminates all of the allegations complained of in the Rule 11 Motion.

6.      The Rule 11 Motion argues four specific grounds for sanctions:  (1) Plaintiff's claims based on misrepresentations are legally and factually insufficient because Plaintiff was not the real party in interest; (2) Defendants' purported misrepresentations in paragraphs 20, 26, and 27 of the Complaint are not well-grounded in fact; (3) Plaintiff's unfair and deceptive trade practices claim is legally insufficient; and (4) the Complaint was filed for an improper purpose.

## II.

## LEGAL STANDARD

7.      The filing of the Amended Complaint does not moot Defendants' Rule 11 Motion, despite the fact that Defendants seek sanctions based on alleged failures in Plaintiff's original Complaint.  "Counsel confronted with a Rule 11 motion may withdraw or amend the pleading, or withdraw from the case entirely, but this does not avert the imposition of sanctions since courts have the affirmative duty to impose sanctions whenever a provision of the rule is violated."  1 G. Gray Wilson, *North*

*Carolina Civil Procedure* § 11-4 (3d ed. 2007). *See also VSD Commas. v. Lone Wolf*

*Publ. Group,* 124 N.C. App. 642, 644, 478 S.E.2d 214, 216 (1996) ("[Rule 11 motions]

have a life of their own and they address the propriety of the adversary proceedings

that have previously occurred in the case without regard to whether the adversary

proceedings in question are continuing when the motion . . . is filed."). Therefore, the

Court considers Defendants' Rule 11 Motion on the merits.[2]

8.      Rule 11 provides, in relevant part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

N. C. R. Civ. P. 11(a). When a paper is signed in violation of this standard,

> the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of

---

[2]  A different result would likely occur in federal court. North Carolina Rule of Civil Procedure 11 was last amended in 1986 and is nearly identical to the version of Federal Rule of Civil Procedure 11 in effect at that time. *Compare* N.C. R. Civ. P. 11(a) *with* Fed. R. Civ. P. 11 (1986); *see also Turner v. Duke Univ.,* 325 N.C. 152, 163, 381 S.E.2d 706, 713 (1989) ("With the exception of one sentence in the federal counterpart not relevant here, N.C.G.S. § 1A-1, Rule 11(a) is identical to the federal rule."). In 1993, Federal Rule of Civil Procedure 11 was amended to create a safe harbor provision. Under the Federal Rules, once a party serves a Rule 11 motion on the opposing party, the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). North Carolina's Rule 11 does not contain a parallel safe harbor provision. If North Carolina's Rule 11 were identical to the current Federal Rule 11, Plaintiff's timely filing of the Amended Complaint likely would have prevented Defendants' Rule 11 Motion.

the pleading, motion, or other paper, including a reasonable attorney's fee.

*Id.* Thus, sanctions under Rule 11 will be imposed where a pleading (1) lacks factual sufficiency, (2) lacks legal sufficiency, or (3) was filed for an improper purpose. *Static Control Components, Inc. v. Vogler*, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002). The Court must make findings of fact and conclusions of law in resolving Defendants' Rule 11 Motion. *See Krantz v. Owens*, 168 N.C. App. 384, 391, 607 S.E.2d 337, 342 (2005) (reversing trial court for failure to make appropriate findings of fact and conclusions of law on a Rule 11 motion).

## III.

## FINDINGS OF FACT

9. The Court makes the following FINDINGS OF FACT solely for the purpose of resolving the Rule 11 Motion. Such findings shall not be binding on the parties at a trial on the merits.

10. Defendants[3] owned CDS, which was a distributor of non-perishable goods, including electronic cigarettes, to retailers. In early 2014, Defendants began negotiating with Martin A. Sumichrast ("Sumichrast"), the then Vice Chairman of the private equity firm Siskey Capital, LLC, to develop a "vape retail business" using

---

[3] Defendant Frank Staffieri is named in the original Complaint because he was allegedly a passive owner of CDS, but all of the Complaint's allegations are directed towards Peterson and Stephanie Staffieri. The Amended Complaint, which removes any allegations about misrepresentations of CDS's financial position, does not name Frank Staffieri as a party. While Frank Staffieri is a party to the Motions, including the Rule 11 Motion, the Court's use of the term "Defendants" in setting forth the facts of the case should be understood to mean Peterson and Stephanie Staffieri.

CDS and its existing distribution network. (Compl. Ex. B, 2.) KURE was incorporated in April 2014, and Peterson, Staffieri, and Siskey Capital became equal one-third owners of KURE. (Compl. Ex. B, p. 2.) Sumichrast is the current chairman of KURE and was an initial member of KURE's board of directors. (Defs.' Br. Supp. Mot. Rule 11 Sanctions 6.)

11. After its incorporation, Peterson and Staffieri were officers and directors of KURE. (Compl. Ex. B, p. 2.) Peterson served as the President and CEO of KURE, and KURE managed CDS as a wholly-owned subsidiary. KURE received $9 million from investors to commence operations, and in July of 2015, Peterson contacted Siskey Capital seeking additional capital to continue KURE's operations. (Compl. ¶¶ 14, 17.) On account of this request, KURE's principals began looking more closely into Peterson's and Staffieri's management of KURE.

12. KURE's board of directors requested detailed financial records from Defendants, which Defendants allegedly never provided. Defendants also allegedly deleted most of their financial-related work e-mails at that time. The board of directors removed Defendants from KURE's management in August 2015 and extinguished CDS by fully merging it into KURE in November 2015. Following Defendants' removal from KURE, KURE's board performed an internal investigation and retained an external auditor—Grant Thornton LLP—to perform forensic accounting services. On April 19, 2016, Grant Thornton issued a report concluding that, based on its review, Defendants had apparently misrepresented CDS's financial

position to lenders, particularly in taking out loans from the Small Business Administration ("SBA"). (Compl. Ex. B.)

13. Plaintiff then retained Smith and Nexsen Pruett for the purpose of instituting the present litigation. Smith's primary contact at KURE was Paul Porter ("Porter"), who is a licensed North Carolina attorney, KURE's Corporate Secretary, and a Managing Director of Siskey Capital. Porter and Smith had previously been law partners at the same firm and have a close professional and personal relationship. (Smith Aff. ¶ 5.) In preparing the Complaint, Smith met with Porter and other executives at KURE and Siskey Capital to discuss the background facts. (Smith Aff. ¶ 6.) Smith then reviewed a large number of documents provided to him by Porter, some of which he identified to the Court in a privilege log, (Smith Aff. ¶ 6, Ex. A,) and continued to discuss the facts of the case with Porter as he drafted the Complaint.

14. Plaintiff's Complaint, as filed, contains specific allegations about Defendants' alleged misrepresentations. Paragraph 20 contains five subparagraphs of various purported misrepresentations based on "[t]he 2013 CDS financial statements that Defendants provided to Plaintiff," which is attached to the Complaint as Exhibit A. (Compl. ¶ 20(a).) These subparagraphs include allegations that Exhibit A "grossly overstated CDS's inventory by over $500,000.00," (Compl. ¶ 20(a)), overstated CDS's net income by over 400% when compared to CDS's tax returns, (Compl. ¶ 20(b)), failed to include or misrepresented the nature of shareholder loans to CDS, (Compl. ¶ 20(c)–(d)), and failed to disclose two Small Business

Administration ("SBA") loans on which CDS was a co-borrower, (Compl. ¶ 20(e)). Paragraph 26 of the Complaint re-asserts that KURE was ignorant of Defendants' shareholder loans and the SBA loans. Paragraph 27 alleges that Defendants are in possession of and have not returned tangible property belonging to Plaintiff.

15. Plaintiff attached two exhibits to its Complaint. Exhibit A is a 2013 financial statement for CDS, which Defendants provided to Sumichrast during their initial negotiations. (Compl. ¶ 11, Ex. A.) Exhibit A contains CDS's statement of income and retained earnings and CDS's balance sheet for the years 2012 and 2013. Exhibit B is the April 19, 2016 Grant Thornton report.

16. Defendants have produced documents which would potentially defeat many of these specific allegations in the original Complaint. These documents include: a spreadsheet purportedly emailed to Sumichrast multiple times between April 8, 2014 and April 12, 2014, disclosing $1.3 million in shareholder loans, (Peterson Aff. ¶¶ 5–7, Ex. 3–5); text messages exchanged between Peterson and Sumichrast, (Peterson Aff. ¶ 11); KURE's private placement memorandum, (Peterson Aff. ¶ 9); and joint resolutions of KURE's board, (Peterson Aff. ¶ 14, Ex. 9).

17. At least some of the specific allegations in the Complaint are erroneous because of a typographical error in which the Complaint referred to the "2013 CDS financial statements" in Exhibit A when Plaintiff actually used the 2012 figures contained in that document for the purpose of its calculations.

18. Prior to the filing of the Complaint, Porter met with Defendants, when he presented them with a copy of the Complaint and indicated that the Complaint would

be filed later that day if the parties were unable to reach a settlement during the meeting. Plaintiff apparently desired to be first to file any suit, and Plaintiff's settlement demand was unsatisfactory to Defendants.

IV.

CONCLUSIONS OF LAW

A. Motions to Dismiss

19. As this Court has previously stated, the filing of an amended complaint moots a defendant's motion to dismiss the original complaint. *See Krawiec v. Manly*, 2015 NCBC LEXIS 85, at *5 (N.C. Super. Ct. Aug. 24, 2015). Therefore, Defendants' Motions to Dismiss are moot as a matter of law.

B. Rule 11 Motion

a. Real Party in Interest

20. First, Defendants argue that Plaintiff's claims based on Defendants' alleged misrepresentations are legally and factually insufficient because Plaintiff is not the real party in interest to those claims. The Complaint alleges that "[b]eginning in early 2014, Defendants entered into negotiations with Plaintiff to develop a vape retail business, using CDS and its existing distribution infrastructure as a platform for the proposed business venture." (Compl. ¶ 9.) Plaintiff alleges that misrepresentations about CDS's finances were made by Defendants during these negotiations. (Compl. ¶ 11.) Defendants argue that these allegations are factually insufficient because KURE Corp. was incorporated as a result of, and thus not a party to, these negotiations. Defendants allege the negotiations actually took place

between Defendants and Sumichrast on behalf of Siskey Capital. (Defs.' Br. Supp. Mot. Rule 11 Sanctions 5.) These arguments are identical to those in Defendants' mooted Rule 17 motions to dismiss.

21. Plaintiff argues, and the Court agrees, that whether or not Plaintiff is the real party in interest to claims arising out of Defendants' misrepresentations, the North Carolina Rules of Civil Procedure address such a shortcoming in Rule 17, not Rule 11.[4] Under Rule 17, failure to bring a claim in the name of the real party in interest may be grounds for dismissal only after a reasonable time has been allowed to bring in the real party in interest. N.C. R. Civ. P. 17(a). The Court of Appeals has held that "[c]ourts should not impose sanctions under Rule 11 when relief is available under another provision which more specifically addresses the situation." *Overcash v. Blue Cross & Blue Shield*, 94 N.C. App. 602, 618, 381 S.E.2d 330, 340 (1989) (concluding that any fee award for defendant's ERISA action should have been determined under the more specific ERISA provision rather than Rule 11) (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986)); *see also Brooks v. Giesey*, 334 N.C. 303, 318–19, 432 S.E.2d 339, 347–48 (1993) (citing *Zaldivar* for the same rule). For this reason, the Court concludes that Plaintiff has not violated Rule 11 by any purported failure to bring claims in the name of the real party in interest.

---

[4] Plaintiff alternatively argues that KURE is the successor in interest to claims that Defendants made affirmative misrepresentations to Siskey Capital—a one-third owner of KURE—to induce the creation of the KURE-CDS joint venture. In light of the Court's resolution of this issue, the Court need not address Plaintiff's alternative argument.

b. Chapter 75 Claim

22.    Second, Defendants contend that Plaintiff's unfair and deceptive trade practices claim was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" because of North Carolina law holding that the purchase or sale of securities is not actionable under Chapter 75. (Defs.' Br. Supp. Mot. Rule 11 Sanctions 15.)  In determining whether a paper violates the legal sufficiency prong of N.C. R. Civ. P. 11(a), the Court must first determine whether the paper is facially plausible.  *Mack v. Moore*, 107 N.C. App. 87, 91, 418 S.E.2d 685, 688 (1992).  If the paper is not facially plausible, the question is whether the alleged offender made a reasonable inquiry into the law and "formed a reasonable belief that the paper was warranted by existing law, judged as of the time the paper was signed." *Id.*

23.    It is well settled law in North Carolina that "securities transactions are beyond the scope of N.C. Gen. Stat. § 75-1.1." *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985).  This rule is based on the rationale that securities transactions are "already subject to pervasive and intricate regulation under the North Carolina Securities Act, N.C. Gen. Stat. § 78A-1 *et seq.*"  *Id.* Furthermore, this Court has specifically rejected the argument advanced by Plaintiff that fraudulent misrepresentations to induce a securities investment fall outside the securities exception. *Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at *46 (N.C. Super. Ct. Feb. 27, 2015) ("[B]ecause the gravamen of Plaintiff's constructive fraud claim,

like their other claims, is that Defendants fraudulently induced Plaintiffs to invest in securities, Plaintiff's UDTPA claim must be dismissed.").

24. Nevertheless, the Court concludes that Plaintiff made a reasonable determination after a reasonable inquiry that the claim was warranted under existing law. The Complaint also asserts a claim for breach of fiduciary duty, and Smith has asserted that, based upon his inquiry into the law, he understood the securities exception but believed that the Chapter 75 claim was merited because of his understanding that, "[Chapter 75] applied to interactions between market participants, which CDS and KURE certainly were, and [I] understood that it applied in instances in which the defendant breached fiduciary duties." (Smith Aff. ¶ 8(j).) The Court concludes that Smith's belief that the claim was warranted by existing law was reasonable because: (1) Plaintiff's allegations extended beyond the purchase and sale of securities; and (2) in certain instances, North Carolina courts have upheld unfair and deceptive trade practices claims on the basis of an alleged breach of fiduciary duty. *See, e.g.*, *Sara Lee Corp. v. Carter*, 351 N.C. 27, 31–33, 519 S.E.2d 308, 311–12 (1999) (upholding trial court's finding that conduct underlying plaintiff's breach of fiduciary duty claim also gave rise to a Chapter 75 claim); *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 250, 567 S.E.2d 781, 788 (2002) (reversing dismissal of a Chapter 75 claim where the trial court erred in dismissing breach of fiduciary duty claim). In light of this case law and the scope of Plaintiff's allegations, the Court concludes that Smith formed a reasonable belief that the Chapter 75 claim was warranted by existing law.

25.     The Court therefore finds and concludes that "a reasonable person under the same or similar circumstances would have terminated his or her inquiry and formed the belief that the claim was warranted under existing law" or a good faith extension, modification, or reversal of existing law. *Bryson v. Sullivan*, 330 N.C. 644, 661–62, 412 S.E.2d 327, 336 (1992); *see also Mack*, 107 N.C. App. at 92, 418 S.E.2d at 688–89 ("[T]he pivotal question is whether a reasonable [attorney] after having read and studied the applicable law as previously set forth in this opinion, would have concluded that she had the right to [bring the claim.]"). The Court thus concludes that Rule 11 sanctions are not appropriate on the basis of Plaintiff's assertion of its Chapter 75 claim.

c.   Improper Purpose

26.     Third, Defendants allege that Plaintiff's Complaint was filed for an improper purpose. An improper purpose inquiry is distinct from Rule 11's factual and legal sufficiency requirements. *Bryson*, 330 N.C. at 663, 412 S.E.2d at 337. An improper purpose is "any purpose other than one to vindicate rights . . . or to put claims of right to a proper test." *Mack*, 107 N.C. App. at 93, 418 S.E.2d at 689. The movant bears the burden of proving that a paper has been filed for an objectively improper purpose. *Bryson*, 330 N.C. at 656, 412 S.E.2d at 333.

27.     Defendants contend that Plaintiff filed its Complaint for the improper purpose of harassing Defendants by "'be[ing] the first to file' in an attempt to create 'leverage' for a negotiation." (Defs.' Br. Supp. Mot. Rule 11 Sanctions 17.) In support of this argument, Defendants' brief describes a contentious pre-filing settlement

meeting where Plaintiff's representative "demanded" that Defendants sign a settlement agreement or Plaintiff would file its Complaint within the hour.

28.     Defendants' description of the pre-filing settlement agreement presents a subjective view of Plaintiff's pre-filing demands, but without more in the evidentiary record, that conduct does not demonstrate that "an improper purpose may be inferred from the alleged offender's objective behavior." *Mack*, 107 N.C. App. at 93, 418 S.E.2d at 689.  Defendants have alleged that Plaintiff informed Defendants that it would be "first to file" if Defendants did not accept its proposed settlement offer.  Defendants, however, have not pointed to any authority demonstrating that a desire to gain a litigation advantage is beyond the scope of "vindicating rights" or "putting claims of right to a proper test."  Finding that Plaintiff acted with an improper purpose would expose to sanctions countless attorneys who make pre-filing settlement demands or seek to file before the opposing party does.  As such, the Court concludes that Plaintiff did not file its action for an improper purpose on the record advanced here.[5]

        d.  Specific factual allegations

29.     Finally, Defendants allege that the allegations contained in paragraphs 20, 26, and 27 of the Complaint are not well-grounded in fact.[6]

---

[5] Indeed, at the hearing, the Court asked Defendants' counsel whether, beyond the ordinary time and expense involved in defending a lawsuit, Defendants had suffered any particular harm from the filing of the original Complaint.  Defendants' counsel stated that Defendants have suffered reputational damage from having the Complaint on the public record.  In light of the Complaint's status as moot, counsel for all parties consented to the sealing of the original Complaint.

[6] Defendants identify paragraph 27 as violating Rule 11.  Defendants' principal brief advances no specific allegations regarding paragraph 27's factual insufficiency, and Defendants' perfunctory assertion in their reply brief that KURE has "conceded that it knew

30. In determining whether a paper meets the factual certification requirement of Rule 11, the Court must analyze "(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *McClerin v. R-M Industries, Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995).

31. In support of its Rule 11 Motion, Defendants first point out that certain allegations in paragraph 20 are mathematically incorrect. Plaintiff has stated that the errors in paragraph 20 are the result of a typographical error. Exhibit A contains CDS's 2012 and 2013 financial results, and Plaintiff has stated that it used the 2012 figures in drafting the Complaint yet mistakenly referred to the document as the "2013 CDS financial statements." The Court concludes that this explanation is sufficient to explain the factual errors in paragraph 20. For example, using the 2012 numbers, paragraph 20(b) does appear to be supported by the Complaint's exhibits. (Pl.'s Br. Opp. Mot. Rule 11 Sanctions 3–4.)

32. Furthermore, Defendants direct the Court's attention to a number of documents, which they argue were available to Plaintiff prior to filing, revealing the true nature of the shareholder loans and the SBA loans. Some of these documents, including KURE's private placement memorandum and the joint resolutions of KURE's board, were issued after the April 24, 2014 stock exchange in which KURE acquired CDS. Plaintiff's allegations, however, address alleged misrepresentations made prior to the stock exchange for the purpose of inducing that transaction, so

individual defendants did not possess any of KURE's property when the complaint was filed" does not satisfy Defendants' burden of proof on a Rule 11 motion.

later-dated documents do not prove that the Complaint was factually insufficient. Nevertheless, in the face of these documents challenging the allegations of the Complaint, the question before the Court is whether Plaintiff made a reasonable inquiry and reasonably relied on the results of its inquiry in alleging in paragraphs 20 and 26 that Defendants failed to disclose the shareholder loans and the SBA loans.

33.    As an initial matter, the Court concludes that Smith made a reasonable inquiry into the facts of the case and reasonably believed his position was well-grounded in fact.  In his affidavit to the Court, Smith has offered testimony that his primary contact at KURE was Porter, with whom Smith has a long professional relationship.  (Smith Aff. ¶ 5.)  Smith has detailed the inquiry process he undertook, which involved meeting with various executives at KURE, reviewing a large number of provided documents, and discussing the allegations of the Complaint with Porter. (Smith Aff. ¶ 6.)  The Court concludes that Smith's inquiry was reasonable under the circumstances, particularly in light of his relationship with, and the sophistication of, Porter.  Although Defendants have produced documents credibly challenging certain allegations in the Complaint, the Court nevertheless concludes that Smith's reliance on Porter and his review of KURE's records was reasonable.  *See Twaddell v. Anderson*, 136 N.C. App. 56, 70, 523 S.E.2d 710, 720 (1999) ("[I]n determining compliance with Rule 11, courts should avoid hindsight and resolve all doubts in favor of the signer.").  The Court therefore concludes that Smith has not violated the factual sufficiency prong of Rule 11.

34. The Court further concludes, based upon the record before it, that KURE has not violated this same aspect of Rule 11. This is a closer question, because Defendants have put forward evidence that Sumichrast, whose knowledge can be imputed to KURE, arguably possessed documents disclosing the nature of the shareholder and SBA loans at the time of the April 24, 2014 stock exchange. Nevertheless, Plaintiff has argued, and the Court agrees on the current record, that Plaintiff made a reasonable inquiry into the facts of the case and came to reasonably rely on the results of that inquiry.

35. Plaintiff's allegations are not, under the circumstances, unreasonable, because Plaintiff's inquiry uncovered sufficient evidence for it to conclude that Defendants had misrepresented CDS's financial condition prior to its merger with KURE. Plaintiff also states that it uncovered evidence that Peterson may have deleted all of his e-mails from the time when Defendants were negotiating for the formation of KURE. (Smith Aff. ¶ 8(a).) Plaintiff additionally relied on an audit by Grant Thornton, undertaken after the removal of Defendants, in which the auditor concluded that "CDS misrepresented its financial condition during the loan application and approval process." (Compl. Ex. B, p 4.)

36. The thrust of Plaintiff's original Complaint is that Defendants misrepresented CDS's financial condition when it first approached Sumichrast, as evidenced by Exhibit A. While Defendants have identified evidence which would potentially defeat Plaintiff's claims at trial, the Court does not conclude that Plaintiff altogether failed to conduct a reasonable inquiry or form reasonable conclusions

based on the results of its inquiry. Nevertheless, if later discovery in this case should reveal that certain individuals at KURE, including Sumichrast, knew that specific facts in the Complaint were false at the time it was filed, the Court is prepared to revisit Defendants' allegations on a renewed motion.

V.

CONCLUSION

37. **WHEREFORE**, for the foregoing reasons, the Court hereby **ORDERS** as follows:

a. Defendants' Motions to Dismiss are **DENIED as moot**.

b. Defendants' Rule 11 Motion is **DENIED** as to James C. Smith and Nexsen Pruett, LLC.

c. Defendants' Rule 11 Motion is **DENIED** as to KURE. If Defendants discover evidence that Plaintiff had actual knowledge that allegations in the Complaint were false at the time of filing, the Court will consider a renewed motion for Rule 11 sanctions.

d. As discussed *supra* in footnote 5, the Court, with the consent of the parties, **ORDERS** the original Complaint sealed.

**SO ORDERED**, this the 5th day of January, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases